J ONES, Chief Judge,
delivered the opinion of the court:
■ This is a suit for pay during a period of alleged wrongful removal of plaintiff from his position in the post office at Greenbelt, Maryland.
Plaintiff is a veteran of World War I. He is receiving disability compensation of $20 per month from the Veterans’ Administration and is entitled to a 10 point preference rating.
In May 1944, while he was a carrier in the Post Office Department, an inspector for the Post Office Department, Washington, D. C., Mr. F. K,. Kruger, made a preliminary investigation of plaintiff. In July of the same year the First Assistant Postmaster General directed the inspector to make a further investigation and report with a recommendation as to what action should be taken.
*543 On September 18, 1944, the inspector wrote plaintiff that he was charged with certain offenses considered to be against the best interests of the postal service, and that it was necessary that his removal be considered by the Post Office Department for the good of the service. Four charges were .set out in detail. He was given five days to answer in writing, and was told that if more time was needed it would be granted upon written application showing the necessity therefor.
The letter was handed to plaintiff by the inspector the same day.
On September 20 plaintiff replied in writing to the charges.
On September 29, 1944, the inspector made a written report of his investigation to the Inspector in Charge, Washington, D. C. Paragraph 19 of the report was as follows:
In view of the facts set forth, it is not believed that the retention of Carrier Allan A. Bryan is in the best interests of the service, nor is it believed that any improvement can be expected from him in the future, therefore his removal is recommended.
On October 5,1944, the postmaster at Greenbelt wrote Inspector Kruger recommending that the Post Office Department give favorable consideration to the removal of plaintiff from the service.
On October 27, 1944, the First Assistant Postmaster General wrote the postmaster at Greenbelt, referring to the charges of expanding office time, insubordination, loitering on the route, and deliberate delay in delivering the mail, and -stating that it had been decided after careful consideration of the evidence that plaintiff should no longer be retained in the service. The letter further stated that the postmaster •should afford plaintiff an opportunity to resign and that if .he refused the postmaster was authorized to remove him and was requested to inform plaintiff in writing of the reasons for the Department’s action.
The postmaster at Greenbelt offered plaintiff vouchers -covering his accrued pay and a resignation form requesting that plaintiff execute the papers. He refused and demanded to know the authority of the postmaster to take such action. *544 The postmaster then handed plaintiff the-letter from the First Assistant Postmaster General. Plaintiff read the letter, delivered his key to the postmaster, left the post office, and did not return to work in the Post Office Department until after he was reinstated. The postmaster mailed plaintiff a copy of the letter of October 27,1944, a few days later.
On October 20, 1944, plaintiff had presented a written request for release from the office as carrier for the purpose of entering the Merchant Marine service. In replying, on October 31, 1944, the First Assistant Postmaster- General referred to the charges which had been made against the plaintiff, informed him that it was-not the custom to grant releases to employees for the purpose of entering the military service, but inasmuch as it -had been decided that he should no longer be retained in the service and was being separated therefrom, either by separation or removal, he would no longer be under the jurisdiction of the Department.
Immediately after plaintiff had read the letter of October 27, 1944, he went to see the Superintendent of the Second Division, Post Office Service,-and obtained information as to the procedure for appeal within the Post Office Department. He appealed- by letter dated November 1, 1944.
On November 3, 1944, plaintiff wrote the postmaster at Greenbelt, Maryland, attaching an application for retirement on account of total disability. No action was taken on this application. On November.4, plaintiff’s services as -carrier in the Post Office Department were terminated.
-On November 9,1944, plaintiff-appealed to. the Civil Service Commission under the provisions .of section 14 of the Veterans’ Preference Act of 1944 (5 U. S. C. 863).
A few days later plaintiff wrote the Post Office Department stating that the- postmaster at Greenbelt had failed to act on his appeal and requested that the appeal be granted. He was advised in reply that he could appeal to the Director of Personnel, Chairman, Board of Appeals, Post Office Department. On December 13,. 1944, plaintiff .wrote the Chairman of the- Board of Appeals requesting a hearing before the Board. The Board replied that information had been received that he had. appealed the case to the Civil Service Commission under section 14 of the Veterans’ Preference *545 Act of 1944, and that under the circumstances it was believed unnecessary for the Board of Appeals to further hear the case since that course had been taken. Under the circumstances plaintiff was not granted a hearing on his appeal to the Post Office Department.
Plaintiff’s appeal to the Civil Service Commission was heard and considered. After an investigation the Acting Chief Law Officer of the Commission issued findings and recommendation to the effect that the action of the Post Office Department in discharging plaintiff effective November 4, 1944, was possibly justified on the evidence presented to the Post Office Inspector assigned to this particular case. However, it was thought that the inspector was not given a true picture of the situation as it existed at the Greenbelt Post Office; that in view of all the circumstances instead of dismissing plaintiff he should have been given another opportunity to improve his services. It was accordingly recommended that Mr. Bryan be given another opportunity and restored to duty in a post office other than at Greenbelt. It was further recommended that such restoration be in a position of the grade, salary and seniority which Mr. Bryan had before he was discharged. The Acting Chief Law Officer notified both the Post Office Department and the plaintiff that if either one was not satisfied they could appeal the findings and recommendation to the Commissioners of the United States Civil Service Commission. Neither party appealed. The Post Office Department and the Civil Service Commission entered into negotiations to reinstate plaintiff in the Post Office Department.
Plaintiff was restored to duty as a regular clerk in the post office at Mt. Rainier, Maryland, on September 16, 1945, at the rate of $2,100 per annum, but shortly thereafter in view of the $400 increase for clerks and carriers of the Post Office Department in plaintiff’s grade as provided by act of Congress, plaintiff was notified that effective as of the date of reinstatement, September 16, 1945, his salary would be $2,500 per year.
Between November 4, 1944, and September 16,1945, plaintiff earned no outside income, but during that period he withdrew his retirement deductions in the sum of $500. He also *546 received during that time $20 per month for service-connected disability from the Veterans’ Administration.
Plaintiff’s contention that he did not receive 30 days’ notice' of the contemplated action is not supported by the record in this case. As a matter of fact, considerably more than 30-days elapsed between the time the notice, was given and the time of actual removal. Plaintiff contends that his rights have been infringed because he was deprived of an appeal within the Post Office Department. Under the regulations of the Post Office Department the plaintiff did have a right-to have his grievances heard and also had a right to appeal from an unsatisfactory decision within 30 days to the proper bureau head within the Post Office Department. Plaintiff was advised of the decision to remove him on October 31, 1944. On November 1, 1944, plaintiff wrote a letter stating his grievance to his immediate unit head, who was the postmaster at Greenbelt, Maryland. Under the order, the postmaster had 20 days within .which to make reply. In the meantime the plaintiff saw fit to appeal directly to the Post Office Department, Division of Post Office Service.
This second appeal was answered by the First Assistant Postmaster General on December 1, 1944, which was within the 30-day requirement. The plaintiff was told that the First Assistant had found no basis for changing the previous decision. He was advised that he could further appeal to the Director of Personnel, Chairman, Board of Appeals, Post Office Department. Plaintiff filed such appeal on December 13, 1944. On January 8, 1945, the Chairman of the Board of Appeals wrote to plaintiff that- information had been received that plaintiff had already appealed his case to the Civil Service Commission under section 14 of the Veterans’ Preference Act of 1944, and that under those circumstances it was believed unnecessary for the Department Board of Appeals to-hear his case.
The Civil Service Commission in making its decision did not find that there was any procedural defect on the part of the Post Office Department in handling plaintiff’s case. It did not reverse the action of the Post Office Department, It did not direct that plaintiff be reinstated. It merely *547 recommended that be be given a comparable position in another- post office. This was done.
• Plaintiff has sued for the salary he would have received between the date of his removal from the service and the date of his restoration, had he remained in the service. The question before us is whether the process of removal of plaintiff from his position in the post office at Greenbelt, Maryland, was procedurally defective. It has been repeatedly held by the Supreme Court and by this and other courts that if the procedural requirements of the statutes are substantially complied with the court will not interfere with the discretion of the-Department in passing upon the removal of an employee. In other words, the court will not go behind the procedural requirements to inquire into the merits of the action taken. Eberlein v. UnitedStates, 257 U. S. 82, 84; Elchibegoff v. United States, 123 C. Cls. 709; Wittner v. United States, 110 C. Cls. 231, 233, 234.
The plaintiff offers a number of criticisms having to do primarily with the question of procedure. ' He charges that the notice of September 18, 1944, did not inform him of his right under section 14 to appeal the charges set forth therein. Clearly, the purpose of the notice was to advise plaintiff of the nature of the charges in order that he might have an opportunity to answer those charges. These requirements were fully met. While plaintiff had a right to answer personally, neither the statute nor the regulation pursuant thereto required that defendant notify plaintiff of those rights. Circumstances might be conceived under which notice should include that information. Plaintiff, however, had been in the postal service for many years. The main objective of the notice was to give him warning of the charges and an opportunity to reply thereto. The plaintiff also claims that the notice failed to inform him of his right to appeal to the' Civil Service Commission; that the action was not proposed by any person in “proper authority.” It appears to us that-the inspector was probably in better position than anyone else to learn the facts and make the recommendation. Mr. Kruger was acting at the direct request of the First Assistant Postmaster General who finally gave the instructions as to the action that Avould be taken.
*548 In looking over the record we find a.number of difficult facts and circumstances. The plaintiff asked for a release'in order to join the Merchant Marine. He filed an application for retirement for total disability. He admitted that his eyesight was not good; in fact he had an operation for the removal of a cataract during the period following his removal and prior to his restoration. He advised the Civil Service Commission that this operation was performed on March 28, 1945; that on May IT, 1945, he was released from the hospital; that while it was believed the operation on the eye was successful and that his sight would eventually be normal, it could not at that time be fully determined. His recovery was slow and he was still receiving out-patient treatment. The recital of these facts show the difficulties that would be encountered should the court in any of these cases go beyond the procedural requirements and investigate the merits of the individual case, except where arbitrary or capricious action or bad faith on the part of the officials is alleged and proved. In the first place it would be impractical to do so as it would require extensive hearings on all phases of each individual case.
For the reasons that have been frequently stated in the various decisions, this authority is lodged in the appropriate department which is in a better position than anyone else to know the merits and the demerits of the particular case. As a further safeguard the right of appeal to the Civil Service Commission is given each employee. That Commission is equipped and has the personnel to go into the merits of the individual case.
Regardless of any slight errors that may have been made, the record rather clearly shows that the Department made full effort to comply with the requirements of the statute when the case is considered as a whole, and the record is taken in its entirety. We find that the procedural requirements were substantially complied with and that the plaintiff, therefore, is not entitled to recover.
The petition is dismissed. It is so ordered.
MaddeN, Judge; Whixakee, Judge; and LittletoN, Judge, concur.
*549 Judge LaRAMORE took no part in the consideration or decision of this case.
FINDINGS OF FACT
The court, having considered the evidence, the briefs and argument of counsel, and the report of Commissioner Wilson Cowen, makes the following findings of fact:
1. Plaintiff is a veteran of World War I serving in the Army from May 15, 1918 to January 24, 1919. He established a ten-point preference credit as a result of his service and is in receipt of a pension from the Veterans’ Administration.
2, F. R. Kruger, an inspector for the Post Office Department, Washington, D. C., made a preliminary investigation of plaintiff in May 1944. In July of 1944, at the instance of the First Assistant Postmaster General, Mr. Kruger was requested to make a further investigation of plaintiff and to submit a report with his recommendation as to what action should be taken concerning plaintiff. The investigation was completed prior to September 18, 1944, on which date Mr. Kruger wrote plaintiff as follows:
In accordance with Section 48, Postal Laws and Regulations of 1940, you are charged with the following offenses, considered to be against the best interests of the Postal Service. Therefore, it is necessary that your removal be considered by the Post Office Department to promote the efficiency of the Postal Service.
* * * * *
The letter contained a detailed statement of the four charges against plaintiff and concluded as follows:
You will be allowed five days from the receipt of this letter for answering in writing. Any facts or circumstances not previously furnished me by you may be included in your reply in support of which you may attach such affidavits as you may care to submit relating to the charges. If, on receipt of your reply, it appears further investigation is warranted, such action will be taken. If additional time is needed it will be granted upon written application to me showing the necessity.
Your reply and any affidavits submitted therewith will accompany my report to the Department in order *550 that the proper administrative bureau may decide what action to take in your case.
3. Mr. Kruger handed the letter of September 18, 1944, to plaintiff on the same day the letter was written. At that time plaintiff knew that he had an opportunity to answer the letter and the charges. He also understood that he might be discharged as a result of the investigation and charges preferred against him.
By letter addressed to Mr. Kruger under date of September 20,1944, plaintiff replied in writing to the charges.
4. Section 43, Postal Laws and Begulations of 1940, which was referred to in Mr. Kruger’s letter of September 18,1944, provided as follows:
No person in the classified civil service of the United States shall be removed therefrom except for such cause as will promote the efficiency of said service and for reasons given in writing, and the person whose removal is sought shall have notice of the same and of any charges preferred against him, and be furnished with a copy thereof, and also be allowed a reasonable time for personally answering the same in writing; and affidavits in support thereof; but no examination of witnesses nor any trial or hearing shall be required except in the discretion of the officer making the removal ; and copies of charges, notice of hearing, answer, reasons for removal, and of the order of removal shall be made a part of the records of the proper department or office, as shall also the reasons for reduction in rank or compensation; and copies of the same shall be furnished to the person affected upon request, and the Civil Service Commission also shall, upon request, be furnished copies of the same.
5. Section 92 of the Manual of Instructions for Post Office Inspectors in effect in 1944 provided in pertinent part as follows:
1. Whenever charges against an employee are being investigated the accused should be given a full opportunity to make any statement or to present any evidence to the inspector which he thinks will tend to support his views. This requires that the substance of the charges be made known to him * * V
*551 Section 93 of the Manual of Instructions for Post Office Inspectors in effect in 1944 provided in pertinent part as follows:
1. When the facts disclosed by an investigation justify a recommendation for the removal of, or other disciplinary action against, a classified employee, charges in writing must be presented to the accused. Every report and every letter of charges must be complete and in full justification of the recommendation made. A copy of the charges and reply thereto, if any, should accompany the inspector’s report.
2. Postal employees are entitled to present grievances and to appeal from decisions reached. The procedure to be followed is contained in Postmaster General Order No. 16112, page 1, September 1941 Supplement to the Postal Guide. It is essential, therefore, that letters of charges be prepared strictly in accordance with Civil Service rules; that reports be complete as to the pertinent facts and contain information necessary to permit the Department to make a judicial determination and defend its action in the event of appeal.
• 6. On September 29, 1944, 11 days after he had delivered the letter containing the charges against plaintiff, Post Office Inspector Kruger made a written report of his investigation of the conduct of and service performed by plaintiff to the Inspector In Charge, Washington, D. C. Paragraph 19 of the report stated:
In view of the facts set forth, it is not believed that the retention of Carrier Allan A. Bryan is in the best interests of the service, nor is it believed that any improvement can be expected from him in the future, therefore his removal is recommended.
7. In cases where a postal inspector determined that the facts disclosed by an investigation justified a recommendation for the removal of an employee, it was the practice in the Post Office Department for the inspector to notify the employee of the charges against him and of the action proposed to be taken before the inspector made his formal report and recommendation to the inspector in charge. "When the inspector’s superiors did not agree with the recommendation *552 made by the inspector, the recommended action was not. taken.
8. On October 5,1944, the Postmaster at Greenbelt, Maryland, wrote Inspector Kruger, recommending that the Post Office Department give “favorable consideration to the removal of Mr. Bryan from the service.”
9. On October 20, 1944, plaintiff wrote to the Post Office-Department, Division of Post Office Service, Washington, D. C., calling attention to the fact that six months previously he had written to the postmaster at Greenbelt, stating that it was his intention to enter the Merchant Marine-Service and serving notice so that the Postmaster would have ample time to secure someone else to replace him. In this letter of October 20,1944, plaintiff stated:
On October 19, 1944, I presented a written request for my release, and asked for one day’s leave, so I could be sworn in and make preparation to leave.
#
Please advise me of the proper proceedur [sic] in obtaining a release from this office as carrier, for the purpose ' of entering the Mercant [sic] Marine service.
At the time the foregoing letter was written, it was evident to plaintiff that he would be removed from his position in the Post Office Department.
10. On October 27, 1944, the First Assistant Postmaster General wrote the postmaster at Greenbelt, Maryland, as follows:
The Department is in receipt of an inspector’s report relative to the case of City Letter Carrier Allan A. Bryan, against whom charges were preferred for expanding office time, loitering on- the route, insubordination and deliberate delay in delivery of mail.
After careful consideration of the evidence submitted, it is decided that Mr. Bryan should no longer be retained in the service. He should be given an opportunity to submit his resignation through you and if he fails to do so, you are authorized to remove him, and requested to inform him, in writing, of the reasons for the Department’s action.
Immediately upon receipt of this letter Mr. Bryan should be granted any leave to which he may be entitled, and nis separation reported on Form 1532, in *553 triplicate, effective at the termination, of such leave, showing the reason as resignation or removal as the case may be. If Mr. Bryan has no annual leave accruing to him, he should be separated at once. You áre also authorized to release .any salary which may be due him.
11. On October 31, 1944, the postmaster at Greenbelt, Maryland, approached plaintiff at the .latter’s desk in the post office at Greenbelt. The postmaster handed plaintiff vouchers covering plaintiff’s accrued pay and leave and a form of resignation with the request that plaintiff execute .siich papers. Plaintiff refused to sign the vouchers or resignation and demanded to know by what authority the postmaster was taking such action. Thereupon the postmaster handed plaintiff the letter from the First Assistant Postmaster General, which is quoted in the preceding finding. After reading the letter, plaintiff delivered his key to the postmaster, left the post office, and did not return to work in the Post Office Department until after he was reinstated. 'The postmaster mailed a copy of the letter of October 27, 1944, which had been written by the First Assistant Postmaster General, to plaintiff on November 4, 1944.
12. On October 31, 1944, the First Assistant Postmaster General wrote the Postmaster at Greenbelt regarding plaintiff’s case as follows:
Reference is made to your letter of October 20,1944, concerning the enlistment of Regular City Letter Carrier Allan A. Bryan in the United States Merchant Marine service.
In this connection your attention is invited to this Bureau’s letter of October 27, 1944, directing you to grant Carrier Bryan an opportunity to resign from the service and if he does not avail himself of this privilege to remove him under charges of expanding office time, loitering on the route, insubordination and ■deliberate delay in the delivery of mail.
The separation of Mr. Bryan should be effective immediately at the termination of any annual leave ■standing to his credit. It is not deemed advisable to grant your request for a deferment of his separation until after the Christmas rush is over.
In so far as the Department is concerned Mr. Bryan is free to enlist in the United States Merchant Marine *554 service. However, inasmuch as he is being absolutely-separated from the service, either by resignation or removal, he will not have any reemployment rights in the Postal Service.
13. On October 31, 1944, the First Assistant Postmaster General replied to plaintiff’s letter of October 20,1944 (Finding 9) as follows:
Reference is made to your letter of October 20,1944, concerning your intention to enter the United States Merchant Marine service.
Charges were preferred against you for loitering on the route and expanding office time, disregard of instructions and a general attitude designed to embarrass the postmaster whenever possible.
After careful consideration of the evidence submitted it has been decided that you should be no longer retained in the service. The postmaster of Greenbelt has been instructed to give you an opportunity to submit your resignation and if you fail to do so to effect your removal at the termination of any earned annual leave to your credit.
The Department does not grant releases to employees for the purpose of entering the military service but inasmuch as-you are being separated from the Postal Service, either by resignation or removal, you will have no reemployment rights and thereafter will not be under the jurisdiction of the Department.
14. On October 31, 1944, immediately after he had read the letter of October 27, Í944 (Finding 10), plaintiff went to see Mr. Wenrich, Superintendent of the Second Division Post Office Service, and from that official obtained information as to the procedure for appeal within the Post Office Department.
Plaintiff appealed from his dismissal by letter to the postmaster of Greenbelt, Maryland, dated November 1, 1914. Having failed to receive a reply to his appeal letter of November 1, 1944, plaintiff again wrote the postmaster at Greenbelt on November 7,1944, as follows:
In regard to the letter addressed to you under date of October 27, 1944, from the First Assistant Postmaster General, and- relative to my resignation or removal.
*555 This letter, or copy of same, was shown to me on Oct. 31, 1944, after I requested it, and copy of same was mailed to me Special delivery on November 4, 1944.
In our short conversation today I asked you regarding what was being done about stipulations contained in the above mentioned letter, and was told, “That’s all over with, and that, there was nothing further to do about it”.
I wish to respectfully draw your attention to the second paragraph in above letter mentioned, and specifically to the part as follows. “He should be given an opportunity to submit his resignation through you and if he fails to do so, you are authorized TO REMOVE HIM, AND REQUESTED TO INFORM HIM, IN WRITING, OF THE REASONS FOR THE DEPARTMENTS ACTION.
As I have no desire to resign, and have allready [sic] so informed ^ou, I request that you inform me of my removal, in writing and of the reasons for the Department’s action, if it is your desire to remove me, or imediately [sic] take steps to reenstate [sic] me, so I may go back to work.
On the same date, i. e., November 7, 1944, the postmaster replied as follows:
In reply to you [sic] letter just handed me wish to state that you have been removed from the Postal service for expanding office time, loitering on the route insubordination and deliberate delay in delivery of mail.
You were so informed at 8; 00 A. M. October 811944 of the reasons for the Departments action with a copy of the First Assistants letter dated Sept, [sic.] 27,1944 which you read and left on your carriers table.
The afternoon of October 31, 1944 you called upon Mr. Wenrich, Superintendent, second division post-office service and talked the matter over with him. On Nov. 4, 1944 I mailed you your copy of the First Assistants letter. Trusting that this answers your letter.
15. On November 3,1944, plaintiff wrote to the postmaster at Greenbelt, Maryland, as follows:
Attached find form 3002, “Application for retirement on account of total disability”.
As it appears quite apparent that my services are to be terminated as of the close of November 4, 1944, I *556 ask tbat action be taken on my application for retirement, before the closing business day of November 4, 1944.
No action was taken on plaintiff’s application for retirement.
On November 4, 1944, plaintiff’s services as carrier in the Post Office Department were terminated.
16. On November 9, 1944, plaintiff appealed to the Civil Service Commission under the provisions of section 14 of the Veterans’ Preference Act of 1944 (5 U. S. C. 868) and sent a copy of his appeal to the Post Office Department.
On November 14, 1944, plaintiff wrote the Post Office Department, Division of Post Office Service, stating that the postmaster at Greenbelt had failed to act on his appeal and requested that the appeal be granted. The First Assistant Postmaster General replied to this request on December 7, 1944, by letter, as follows:
This will acknowledge receipt of your letter of November 14, 1944, with which you transmitted a copy of a letter dated November 9, 1944 addressed to the Civil Service Commission appealing your removal as carrier at Greenbelt.
The communication referred to has been carefully reviewed together with your letter of September 20, 1944 which was in reply to a letter of charges addressed to you by Inspector F. R. Kruger, but no basis has been found for changing our previous decision.
The matter can be further appealed to the Director of Personnel, Chairman, Board of Appeals, Post Office Department as outlined in the September 1941 Supplement to the Postal Guide.
Regarding the bulletins and pamphlets referred to in your letter of November 28, 1944, same can be reviewed in the Post Office Department’s Library, Room 1315.
On December 13,1944, plaintiff wrote the Chairman of the Board of Appeals, Post Office Department, requesting a hearing before the Board. The Chairman of the Board replied by letter of January 8, 1945, which read as follows:
Further reference is made to your communication of December 13 requesting a hearing before the Department Board of Appeals relative to your removal from the position of City Letter Carrier at Greenbelt.
Information has been received that you have ap *557 pealed your case to the Civil Service Commission under Section 14 of the Veterans’ Preference Act of 1944.
In the circumstances, it is believed unnecessary for the Department Board of Appeals to hear your case; and no further action will be taken for the present.
17. At the time plaintiff’s services were terminated, the procedure in the Post Office Department relative to the hearing of grievances of employees and appeals by such employees was contained in Order No. 16112, which was issued August 22, 1941. This order provided in pertinent part as follows:
3. The official in charge of a unit will carefully review the written statement relating to the grievance and if a hearing is requested he will hear the aggrieved, his chosen representatives, or both, and may call such witnesses as deemed necessary. He will also secure a written statement from any employee against whom a grievance may be directed. The aggrieved will be advised in writing of the decision of the official in charge of the unit within 20 days from the date the grievance is presented or notified the additional time which will be required to render such decision. When the official in charge of the unit believes it necessary or desirable, he may appoint a Board of Beview of not less than 2 nor more than 3 postal employees to hear the aggrieved or his representatives. The Board will be advisory and designed to assist the official in charge of the unit in arriving at a decision.
4. When in the employee’s opinion a grievance has not been satisfactorily adjusted by the official in charge of the unit, an appeal may be made in writing to the proper Bureau head in the Post Office Department within 30 days from the date of the decision, or if no decision is rendered within 30 days from the date such decision was due, or the employee may request ■the unit head to refer the matter to the Bureau head for review. Furthermore, an employee may, if he feels the circumstances warrant, present a grievance initially to the Departmental Bureau head. However, this official will return all grievances which in his judgment should have been presented to the official in charge of the unit.
$ $ # $ $
6. When an official in charge of a unit is advised that an appeal will be made to the Department or when the aggrieved makes a request that the decision *558 be forwarded to the Department for review, he should promptly transmit through proper channels, copies of all papers relating to the case, with appropriate comment to the official in charge of the Bureau, Post Office Department, Washington, D. C.
7. Upon receipt of an appeal from, or a request to review, the decision of the official in charge of the unit the Bureau head will arrange for a complete review of the facts and set a date for a hearing if such is desired. He will notify the aggrieved in writing of his decision and transmit a. copy of the decision to the official in charge of the unit.
Plaintiff was not granted a hearing on his appeal to the Post Office Department in accordance with his request.
18. Plaintiff’s appeal was heard and considered by the Civil Service Commission. After an investigation had been conducted, the Acting Chief Law Officer of the Commission issued findings and recommendations on plaintiff’s appeal under date of March 29,1945, as follows:
The action of the Post Office Department in discharging Mr. Allan A. Bryan effective November 4, 1944 was possibly justified on the evidence presented to the Post Office Inspector assigned to this particular case (on the basis of inefficiency in office work, due in a large measure to defective eyesight, but his efficiency was never rated and he was not charged with inefficiency). However, it is thought that the Inspector was not given a true picture of the situation as it existed at the Greenbelt, Maryland, Post Office. It is also the opinion of the undersigned that factors, namely, the supervisory situation in the office and the very definite clash of personalties [sic] between appellant and the Postmaster, contributed greatly to the events leading up to Mr. Bryan’s discharge. It is, accordingly, our belief that instead of dismissing Mr. Bryan he should have been given another opportunity, preferably under another supervisor, to improve his services.
It is therefore recommended that Mr. Bryan be given another opportunity, and restored to duty in a Post Office other than at Greenbelt, Maryland, such restoration to be in a position of salary, grade, and seniority ’ which Mr. Bryan had before he was discharged.
Mr. Bryan and the Post Office Department are privileged in the event either party is not satisfied *559 with this finding and recommendation to appeal further to the Commissioners of the United States Civil Service Commission, Washington, D. C., within thirty (30) days of the receipt of this notice.
19. The findings and recommendations of the Civil Service Commission were communicated to the Post Office Department on April 6,1945. Neither plaintiff nor the Post Office Department took an appeal from the decision of the Acting Chief Law Officer of the Commission. The Post Office Department and the Civil Service Commission entered into negotiations to reinstate plaintiff in the Post Office Department.
20. For some time prior to September 18, 1944, and for a considerable time thereafter, plaintiff’s vision was defective. Because it was difficult for him to read mail addressed in pencil, he was not able to sort the mail as quickly as a carrier with normal eyesight. While delivering the mail on sunny days, he had to get out of the sun and read the addresses in shady spots in order to make certain where the mail should be delivered.
As stated in Finding 15, plaintiff filed an application with the Post Office Department on November 3, 1944, for retirement, on account of total disability.
• On May 2, 1945, after the findings and recommendations of the Acting Chief Law Officer of the Civil Service Com-, mission had been issued, plaintiff wrote the First Assistant Postmaster General:
■ Enclosed find application for “retirement on account of Total Disability”. Becently I submitted to an eye. operation and treatment. However do not know how successful the operation is at this date.
_ I.am in hopes that I will be able to return to work in the not to [sic] distant future, and may ask that my retirement be deferred. However feel that it should be filed before the experation [sic] of 6 months after my removal from the service.
Thereafter on May 19, 1945, plaintiff wrote the Civil Service Commission the following letter:
In reply to your letter dated May 14,1945, File CL; AK: LL. and in connection with my efforts to locate a vacancy in the Postal Service.
*560 You are advised that on March 28 I entered a hospital for treatment and removal of a cataract from my left eye, and was released on May 17, 1945. It is believed that the operation on the eye was successful and that my sight will eventually be near normal, however this cannot be fully determined at present as recovery is slow and am still receiving out patient treatment.
In view of my recent experience, which resulted in my being discharged and stigma placed on my records, I have been rather reluctant about applying for a position until I can see well enough to efficiently perform my work, however I expect to make every effort for reemployment as soon as I complete my treatments and can properly be fitted with glasses, this, I have been advised will probable [sic] be four or five weeks.
I shall keep your office informed in my efforts of getting reinstated.
I wish to take this opportunity of thanking you. in the manner my case was handled and subsequent interest shown.
The evidence does not establish when, following the operation of March 28, 1945, plaintiff’s eyes improved to the extent that he could have efficiently performed the duties required of a carrier or a clerk in the Post Office Department. However, on July 80, 1945, plaintiff wrote the Postmaster General a letter in which plaintiff stated that he had not worked since October 30, 1944, primarily on account of his defective eyesight.
21. On July 4, 1945, the Post Office Department wrote the Civil Service Commission requesting authority to reinstate plaintiff as a clerk in the Mt. Rainier, Maryland, post office. This request was approved by the Civil Service Commission on July 27; 1945.
22. On August 22, 1945, the First Assistant Postmaster General wrote plaintiff as follows:
The Postmaster General has asked me to answer your letter of July 30, 1945 with further regard to your removal from the position of regular city letter carrier in the post office at Greenbelt,- Maryland.
You were given a hearing by the Civil Service Commission and in accordance with the recommendation as a result thereof your reinstatement to the position of regular clerk in the post office at Mount Rainier, *561 • Maryland lias been approved and the postmaster of that office has been advised accordingly.
As soon as necessary forms have been received from the postmaster at Mount Rainier, you will be reassigned to duty.
23. Plaintiff was restored to duty as a regular clerk in the post office at Mt. Rainier, Maryland, on September 16,1945. Plaintiff was originally reinstated at $2,100 per annum, but ,in view of' a $400 increase for clerks and carriers in the Post Office Department in plaintiff’s grade as provided by Public Law .134, 79th Congress, approved July 6, 1945, the Post Office- Department notified the Civil Service Commission that plaintiff’s reinstatement on September 16,1945, was effected at $2,500 per annum instead of $2,100 as previously authorized.
24. Between November 4, 1944, and September 16, 1945, ■plaintiff earned no outside income. In this period plaintiff withdrew from his retirement deductions held in the Post Office Retirement Fund the sum of $500. Also, during this period plaintiff received $20 a month for service-connected disability from the Veterans’ Administration.
25. On September 18, 1945, the Civil Service Commission .wrote the Post Office Department as follows, with respect to the procedure to be followed in handling cases of appeals of employees under Section 14 of the Veterans’ Preference Act of 1944:
It has been called to our attention that the Office of •the First Assistant Postmaster General has noted certain inconsistent practices of regional offices of the Commission in connection with the handling of cases of appeals of employees in the Post Office Department under Section 14 of the Veterans’ Preference Act of 1944.
Specifically stated, it appears that various regional offices have held that a preference eligible must be retained in an active duty status for a period of .at least thirty days following charges in a notification containing a proposed or contemplated adverse administrative action, such as a discharge, while other regional offices have held that the preference eligible must be retained in an active duty status following the adverse decision of discharge regardless of any previous re *562 tention in an active duty status in connection with the submission of charges.
Section 14 of the Act and the Regulations of the Commission pursuant thereto generally provide that when a discharge, suspension for more than thirty days, furlough without pay or reduction in rank or compensation is sought of a preference eligible employee, he shall receive at least thirty days advance written notice of such a proposed action and remain in an active duty status during the period of notice, with certain exceptions not pertinent to the cases under consideration.
Considering the foregoing, an advance written notice of a proposed action, such as a discharge, etc., may be submitted to a preference eligible either at the time of preferring charges or subsequently in connection with the adverse decision. When a proper advance written notice of at least thirty days of a proposed action, such as a discharge, is submitted in connection with charges and the employee is retained in an active duty status during the period of notice, no further advance notification and retention in an active duty status is required at the time of the adverse decision. In other words, the notice containing the charges states specifically what the employing agency proposes to do, so that the employee is fully informed at the time of preparing his answer. On the other hand, if the notification containing the charges is not clear as to the proposed action, such as a discharge or other disciplinary action, a situation may arise which will require an advance written notice of at least thirty days of the proposed action at the time of the adverse decision and the retention of the employee thereafter in an active duty status during the period of notice. Accordingly, a determination of the question as to whether or not there has been a proper advance notice of a proposed action in connection with the submission of charges will depend upon the language used in the notification of the employing agency.
Copies of this letter are being transmitted to all Regional Offices of the Commission for their information and guidance.
CONCLUSION OK LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes that as a matter of law the plaintiff is not entitled to recover, and the petition is therefore dismissed.