Laramoke, Judge,
delivered the opinion of the court;
Plaintiff, a non-veteran, was a Contract Analyst in a division of the Office of Naval Material from January 3, 1956 to May 12,1958, the effective date of her dismissal. She had been previously employed by various Government departments. In August 1951, plaintiff was given notice of a reduction in force and transfer to a secretarial position, *54 effective in October, which would result in a reduction oí one pay grade. She appealed this action to the Civil Service Commission, and in her brief on appeal made accusations of wrongdoing against her immediate superior, and alleged that she had complained of this wrongdoing to other superiors, who had not acted on her complaints.
In November 1957, plaintiff was notified that the proposed reduction in force was cancelled, and consequently the Civil Service Commission terminated action on her appeal.
In January 1958, plaintiff’s attorney sent the Navy Department a copy of the brief filed with the Civil Service Commission specifically pointing out plaintiff’s accusations against her superiors. He also requested that plaintiff be transferred from her temporary assignment as secretary and be restored as a Contract Analyst. Subsequently, the Chief of Naval Material appointed two men, W. James Birthright and George W. Chappelear, to investigate plaintiff’s charges. A meeting was held by them on January 28, 1958, at which time plaintiff, accompanied by counsel, was interrogated under oath as to her allegations. She was also allowed to be examined by her counsel. At this meeting plaintiff repeated her former accusations and, in addition, made further accusations against her former immediate superior, other superiors, and co-workers. Following this meeting, plaintiff was furnished with a transcript of her testimony.
On April 7, 1958, plaintiff was notified by the Chief of Naval Material that she was to be dismissed from the service effective May 7, 1958 for cause. The basis for her removal was that some of her accusations were unfounded and contained intentional misstatements which reflected unfavorably on the honesty and integrity of her co-workers and official superiors. The letter of April 7, notifying plaintiff of her proposed removal, reads as follows:
1. It is proposed to effect your removal from employment in the Department on 7 May 1958. This action is proposed in order to promote the efficiency of the service and for the reasons stated below.
2. Mr. B.. II. Britten, Head, EXOS Personnel Branch, received a letter dated 10 January 1958 from your attorney, Mr. John P. Witsil. The letter enclosed a copy *55 of a brief submitted to the Civil Service Commission in connection with your reduction-in-force appeal, and requested an investigation of a specific complaint contained in the brief.
3. I directed Mr. Birthright to conduct such investigation as appeared appropriate to develop complete information upon which to base a decision as to what action should be taken. This investigation included a meeting with you and your attorney, Mr. Witsil, and Mr. Birthright and Mr. Chappelear of the Office of Naval Material. This meeting was held to obtain more detailed information from you and to permit you to present anything further in support of your position. A complete transcript of this meeting was furnished to your attorney, who has advised that you were given the opportunity to read the transcript, and to make any changes desired.
4. In your brief to the Civil Service Commission and in the inquiry conducted by Mr. Birthright on 29 and 30 January 1958, you made certain allegations which were thoroughly investigated and which could not be substantiated by information furnished by you or by other persons.
5. The following allegations are considered to be unfounded, to contain intentional misstatements to the extent that they reflect unfavorably on the honesty and integrity of your co-workers and official superiors:
a. You alleged that your official superior, Mr. Harry Christenat, struck you on two different occasions. You claimed that the first incident occurred on or about 24 or 25 April 1957 when in a fit of temper he struck you on the chin. You stated that Miss Wild, a co-worker who was present in the outer office, heard the commotion and saw folders hit the wall and heard him hit you; that she asked you if Mr. Christenat had hit you and she replied, “I thought so — why didn’t you hit him back.” You further alleged that later in the day when she was called for dictation, Miss Wild threw her notebook on the floor in a fit of temper exclaiming that Mr. Christenat would not run over her. The facts surrounding this incident could not be substantiated. You alleged that in the second incident your wrist was injured by Mr. Christenat to the extent that it popped and was blue for several weeks. You stated that immediately after this occurrence you went to the washroom where a fellow employee, Mrs. Sarah Lee, found you crying and asserted “If you don’t report that man he is going to kill you one of these days.” In addition, *56 you claimed that while having lunch with Mrs. Olive Whitley she saw the bruise which was the result of Mr. Christenat’s grabbing your wrist. Information developed during the investigation did not confirm these allegations.
b. In your brief to the Civil Service Commision, you stated that personnel who knew Mr. Christenat stated that he had tried and succeeded in “railroading” other employees out of their jobs and was trying to do the same to you. The investigation has disclosed that you made a positive statement to Lt. M. E. Kreyenhagen that Mr. Christenat had gotten rid of two assistants. When requested to furnish more specific information, you supplied the names of Mr. Pauls and Mr. Shelton as employees who had been “railroaded.” In Mr. Shelton’s case you elaborated that he had been ordered out of Mr. Christenat’s office when he advised Mr. Christenat that he was leaving for another job. You stated that Mr. Shelton called your attention to the condition he was in and advised you not to stay long enough to get in the same position. In regards to Mr. Pauls, you maintained that Mr. Christenat ignored Mr. Pauls and refused to talk to him. You stated that in response to Mr. Pauls’ plea that he be given a chance because he had a wife and several children to support, Mr. Christenat replied “I don’t care how many children you have and how many wives you support, you better get out of here and get yourself a job.” These allegations and statements could not be substantiated.
c. Other specific contentions and accusations that could not be verified in any way follow:
(1) Your allegation that Mr. Christenat used abusive language to you in the presence of Major Gemmell.
(2) Your claim that when you reported to Captain E. M. Fagan the fact that Mr. Christenat had used foul and obscene language to you, he stated that Mr. Christenat would be suspended for his actions.
(3) In connection with your application for the Navy Management Intern Program you stated that you were advised by Miss O’Neill and Mrs. Sommer that no one passed the written examination.
(4) In your reduction-in-force appeal you alleged that you had passed the Civil Service Examination of Procurement Analyst, GS-V, and that Sylvia Sommer who was the incumbent of such a position in ONM had not passed the examination. The transcript of the inquiry conducted on 29, 30 January 1958 shows that you *57 actually took a screening test given in connection with recruitment for a position in the Bureau of Supplies and Accounts. You further alleged that Mr. J. K. Mazzie interviewed you and advised you by memorandum that you had been selected for the job. This allegation has been denied. The investigation has revealed that the job was not filled, but that another applicant who obtained a higher score would have been selected if the job had been filled.
6. No information has been developed which materially substantiates the serious complaint made against your supervisor. Furthermore you have made apparent unfounded statements which were intended to influence judgment and decision on charges made against him. The foregoing facts have been seriously considered in arriving at the decision that it would be in the best interest of the Government to remove you from the rolls of employment in the Navy Department.
7. You are advised that you may answer? in writing, the charges made against you and may furnish affidavits in support of your case. Your reply should be submitted not later than close of business 14 April 1958 to this Office. Furthermore, you will be granted a hearing upon request and may have a representative and witnesses. If you desire a hearing, you should submit a request no later than close of business 14 April 1958.
8. You will be carried on an active duty status during the period of this advance notice.
Plaintiff then requested a copy of the investigation report leading to her dismissal and also requested a hearing on her dismissal so that she could cross-examine witnesses. Her request for a copy of the investigation report was denied, but a hearing before a board appointed to review her dis-missial was set for April 21, 1958. This hearing was postponed at plaintiff’s request to April 28,1958. At that date a brief hearing was held, but at plaintiff’s request on the grounds of ill health a postponement was granted, and the hearing was later set for May 21, 1958. At this hearing on April 28,1958, plaintiff claims that she objected to the prejudicial composition of the board, but this is denied by defendant. At this time plaintiff was furnished with a list of 15 Navy witnesses and was informed that she could interview them. However, she never did this.
On May 7, 1958, plaintiff advised the Chief of Naval Material that “I will not attend any hearing before any *58 Board set up by your office.” Her stated reasons were that witnesses were not to be put under oath, at the hearing and that she had not been furnished with a copy of the investigation report. That same day, plaintiff was then informed that her dismissal for cause would be effective May 12, 1958 on the same grounds as stated in the letter to her of April 7, 1958.
Subsequently, plaintiff appealed to the Secretary of the Navy and the Civil Service Commission, in that order, on the grounds that her dismissal was procedurally defective and it was error not to have furnished her with a copy of the investigation report. Each appeal in turn was denied. This case is complicated by charges and countercharges. The simple fact, however, is that all we are here concerned with is whether the pertinent regulations were complied with. Plaintiff’s counsel admitted in oral argument that this case is entirely premised on procedural errors. Consequently, we have no occasion to consider plaintiff’s discharge on the merits.
The first question presented by the cross-motions for summary judgment is: Did the Chief of Navy Material, in refusing to release the complete report of the Birthright Committee to the plaintiff prior to effecting her separation, violate the provisions of Navy Civilian Personnel Instruction 45.2-3c(4) which provides that the employee must be confronted with all the evidence that influences management’s consideration of the case and must be permitted to defend himself against such evidence prior to decision regarding the action to be taken ?
Navy Civilian Personnel Instruction 45.2-3c(4) provides:
(4) The employee must be confronted with all the evidence that influences management’s consideration of the case and must be permitted to defend himself against such evidence prior to decision regarding the action to be taken. When disciplinary action (including removal, suspension or demotion) is contemplated by management on the basis of classified information, the facts warranting such action must be developed in unclassified form, by separate investigation if necessary, so that the employee can b.e confronted with the reasons for the adverse disciplinary action.
*59 It is plaintiff’s contention that under the aboye regulation she should have been given the report of the investigation, which is referred to as the report of the Birthright Committee, before any hearing thereon. Having so failed, plaintiff says she was deprived of an adequate opportunity to defend herself against the evidence before her dismissal was effected.
Defendant contends that the Navy did follow its own regulations in discharging plaintiff and that no law or regulation required that it make available to plaintiff a copy of the investigation report. Defendant says that under the above-quoted regulation, the only requirement is that a hearing be set up at which all witnesses would appear and testify.
In respect to the above, the regulation merely says that the employee must be confronted with all the evidence that influences management’s consideration of the case. We can see no reason why “confronted” should be given any meaning or definition other than the normal one. Webster defines “confront” as to stand facing or in front of; to put or bring face to face, as to confront one with proof of his wrongdoings. Even in the more exacting provisions of criminal law “confront” means the act of setting a witness face to face with the prisoner, in order that the latter may make any objection he has to the witness.
Here the facts conclusively show that a hearing was ordered at which all the charges and pertinent information would be presented.
The Navy furnished plaintiff a transcript of her statement prior to the hearing date. Although not required by regulation, she was furnished a list of witnesses who were to appear and she was given permission to interview them prior to the hearing. She did not interview them and finally, after the second postponement of the hearing, plaintiff notified the Navy that she would not attend any hearing. She did not attend.
We can find nothing in the pertinent regulations which would remotely require the Navy to furnish to plaintiff s copy of the investigation report. The Navy’s case was ob *60 viously based upon statements of witnesses and not on any documentary evidence. Had plaintiff attended the bearing, sbe could bave listened to tbe testimony, cross-examined tbe witnesses, and offered testimony in ber own behalf.[1] When sbe failed to attend, sbe of ber own volition cbose not to be confronted witb tbe evidence against ber. Instead, sbe failed to appear because she belatedly objected to “* * * any Board set up by your office.” We can find nothing in tbe record to indicate that an objection to tbe composition of this board was ever raised before tbe agency or tbe Civil Service Commission. Nor can we find any evidence that tbe board was set up in an effort to prejudice any rights of plamtiff. Consequently, we believe ber failure to appear was not justified under tbe circumstances.
Plaintiff cites tbe decision of this court in Clackum v. United States, 148 Ct. Cl. 404, in support of ber contentions. The Olackium case is readily distinguishable in that it involved pay of a military reservist under Air Force regulations'and tbe Uniform Code of Military Justice, whereas this case involves a civilian employee and Navy Civilian Personnel Instructions. • This court, in tbe Olaekum, case, held that under the circumstances there involved plaintiff was discharged without' information as to tbe charges against ber and that; there iyas no bearing at all. In the instant case, plaintiff was informed of tbe charges, permitted to reply to them, allowed to interview tbe witnesses against her, and offered a hearing at which time sbe would be confronted by tbe evidence against ber.
Plaintiff also cites Jencks v. United States, 353 U.S. 657. We can see no-relevancy in this situation. Tbe Jeneks case involved- a criminal prosecution in which documents were , demanded at the time of cross-examination, whereas this case merely involves an administrative proceeding which never carné to a bearing because of tbe plaintiff’s choice.
*61 Accordingly, we bold with reference to tbe first issue that the Navy did all and more than required under the regulation involved.
The second and final question presented is: Did the Chief of Navy Material also fail to fulfill the duty imposed upon him by Navy Civilian Personnel Instruction 45.2-3c(5) to attach due weight to factors supporting the employee’s.position by not evaluating in his decision the love notes from her superior that were produced by the plaintiff, and in not mentioning the events that occurred between them on September 16 and 17,1958 ?[2]
The short answer to this contention is that under Navy Civilian Personnel Instruction 45.5-3b(6), no review of the evidence is required. Navy Civilian Personnel Instruction 45.5-3b(6) provides:
(6) Notice of final decision. — After all evidence relating to the charges has been considered, the employee shall be provided with a written decision.. The decision, if adverse, shall state the reasons for the action to be taken and its effective date. The adverse decision must restate the charges presented in the advance notice of the proposed action and must include the findings made with respect to each charge specifically identified. The fundings must be stated in specific terms but need not weigh the evidence pro and con. The findings should also state-specifically what charges in the advance notice were found to be established and what charges, if any, were dropped as not sufficiently supported. * * * [italic supplied.]
Furthermore, there is no evidence in the record disclosing that the Chief of Navy Material did not consider all the pertinent facts in deciding plaintiff’s case. As a matter of fact, plaintiff chose not to attend the hearing and, consequently, does not know what evidence the Navy had or considered.
Moreover, whether or not plaintiff’s accusations regarding her superior are true or not is immaterial in this case. Plaintiff was discharged for making certain false accusations specifically set forth in the notice of her dismissal. Consequently, any attempt at love making on the part of her *62 superior was not specifically contained in the letter advising plaintiff of her proposed removal and any reference thereto is irrelevant and immaterial. In other words, the charge of attempted love making was not developed or considered by the agency. Whether or not disciplinary action was ever taken against her superior is also irrelevant and immaterial.
Since no procedural errors are shown, this court will not inquire in this case into the merits of the dismissal. Collins v. United States, 145 Ct. Cl. 382, 386 and Bryan v. United States, 128 Ct. Cl. 541, 547. Plaintiff’s motion for summary judgment is denied, and defendant’s cross-motion is granted. Plaintiff’s petition is dismissed.
Davis, Judge; DuReee, Judge; Whitaker, Judge; and Jones, Chief Judge, concur.

 Navy Civilian Personnel Instructions provide: “5-4 HEARINGS.
"a. Purpose. — Hearings in disciplinary action cases are conducted solely for the purpose of obtaining facts on -which an equitable decision may be based and to give the employee an opportunity to present his side of the case. Hearings ore purely administrative proceedings; they are not courts nor are they governed by' the legal rules of procedure and evidence.”

 These dates are in error. The correct dates are September 16 and 17,1057.