Fannie Mae CLACKUM

v.

UNITED STATES.

No. 246-56.

United States Court of Claims

Jan. 20, 1960.

William L. Moore, Atlanta, Ga., for plaintiff. Henry M. Hatcher, Jr., Atlanta, Ga., was on the briefs.

Francis X. Daly, Washington, D. C., with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

MADDEN, Judge.

The plaintiff was separated from the United States Air Force on January 22, 1952, with a discharge "under conditions other than honorable." She asserts that the purported discharge was invalid, and sues for her pay from the date of the purported discharge. The following "Statement of Facts Alleged", contained in the following four paragraphs, is copied from the Government's brief.

"On February 2, 1951, plaintiff was a reservist in the United States Air Force, (WAF—Women in the Air Force) and was ordered to active duty as an airman. She was stationed thereafter at Barksdale Air Force Base, Louisiana, in the grade of corporal, with duty in Headquarters and Headquarters Squadron, 301st Air Base Group.

"On April 18, 1951, plaintiff, among others, was called before her commanding officer and a representative of the O.S.I. (Office of Special Intelligence) and interrogated on matters of homosexuality concerning which plaintiff alleges she had no knowledge. Thereafter, until January 1952, plaintiff was repeatedly interviewed by an officer of the O.S.I. concerning homosexual activities and informed that she was under investigation. She was never informed of any charges against her by the Air Force, although in October 1951 she was informed that some action was contemplated against her. Also in October 1951 plaintiff was called before her commanding officer and was given an opportunity to resign under A.F.R. 35–66, (5b) (1). Upon being offered the opportunity to resign, plaintiff refused to resign and demanded in writing that she be tried by court-martial. The purpose of this demand was to require the Air Force to confront her with the basis of the accusations against her and to afford her an opportunity to present evidence in her own behalf.

"Although charges were preferred against plaintiff under the Uniform

Code of Military Justice, the charges were not referred for investigation under the provisions of the Code, they were not brought to her attention, and she had no knowledge of them until after her discharge. After plaintiff was given an opportunity to resign and refused, she was given a psychiatric examination but was not informed of the report of the psychiatrist. No sworn evidence against plaintiff was taken or received by the O.S.I. or by the Air Force, and prior to her discharge plaintiff was not confronted with the nature of the evidence against her. Plaintiff was demoted to the grade of private on January 22, 1952 and on that same day was discharged from the service under conditions other than honorable under A.F.R. 35–66 dated January 12, 1951.

"Plaintiff brought suit in this Court on June 8, 1956. By agreement of the parties, the Court suspended proceedings in this Court to permit plaintiff to file an application before the Air Force Board for the Correction of Military Records on the ground that plaintiff had failed to exhaust her administrative remedies. An application was filed and was denied by the Air Force Board for the Correction of Military Records. The suspension of proceedings in this Court was then removed."

Some of the effects upon a soldier of a discharge "under conditions other than honorable" are briefly stated in Air Force Regulations (A.F.R.) 35–66, dated January 12, 1951, 5(b) (1), which says that the person so discharged may be deprived of many rights as a veteran under both Federal and State legislation, and may expect to encounter substantial prejudice in civilian life in situations where the type of service rendered in any branch of the armed forces or the character of discharge received therefrom may have a bearing.

One's reaction to the foregoing narrative is "What's going on here?"

A woman soldier is interrogated about homosexual matters and is orally told that some action is contemplated against her. She is called before her commanding officer and is offered an opportunity to resign. She indignantly denies the implied charges involved in the situation and demands in writing that she be tried by a court-martial so that she can learn what the charges are, face her accusers, and present evidence in her own behalf. Although charges were preferred against her, they were not referred for investigation as the statutes governing courts-martial require, and neither the charges nor the evidence upon which they were based were ever made known to the soldier until after her discharge. She was summarily given a discharge "under conditions other than honorable", her reputation as a decent woman was officially destroyed, her rights to her accrued pay and accrued leave, and to the numerous and valuable benefits conferred by the nation and many of the states upon former soldiers were forfeited.

Air Force Regulations 35–66 5(b) (1) related to the handling of homosexual charges against enlisted personnel. They provided for a resignation agreeing to accept an undesirable discharge with all its damaging consequences. If the soldier refused to so resign, the regulations provided that a trial by general court-martial would be considered. If the evidence in the case indicated that conviction by a general court-martial was unlikely, then the Secretary of the Air Force was, by the regulations, authorized to "direct discharge and administratively determine whether an undesirable, general, or honorable type of discharge certificate will be furnished."

A dishonorable discharge is, for a soldier, one of the most severe penalties which may be imposed by a court-martial. Elaborate provisions for review of court-martial sentences within the military hierarchy, and potentially by the Court of Military Appeals, are included in our military laws. Yet the Air Force regulations discussed above provide that if the evidence at hand is so unsubstantial

that a conviction by a court-martial would be unlikely, the executive officers of the Air Force may themselves convict the soldier and impose the penalty. It is as if a prosecuting attorney were authorized, in a case where he concluded that he didn't have enough evidence to obtain a conviction in court, to himself impose the fine or imprisonment which he thought the accused person deserved.

The Government defends this remarkable arrangement, and its operation in the instant case, on the ground that it is necessary in the interest of an efficient military establishment for our national defense. We see nothing in this argument. The plaintiff being a member of the Air Force Reserve, on active duty, the Air Force had the undoubted right to discharge her whenever it pleased, for any reason or for no reason, and by so doing preserve the Air Force from even the slightest suspicion of harboring undesirable characters. But it is unthinkable that it should have the raw power, without respect for even the most elementary notions of due process of law, to load her down with penalties. It is late in the day to argue that everything that the executives of the armed forces do in connection with the discharge of soldiers is beyond the reach of judicial scrutiny. Harmon v. Brucker, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503.

After her discharge, the plaintiff appealed to the Air Force Discharge Review Board. Such an appeal is provided for in the Air Force Regulations. Her appeal and that of another female non-commissioned officer were heard together. They were represented by counsel. They had access to a brief which had been written by an investigator, and which summarized conversations which he had had with various persons. The plaintiff and the other appellant testified at length, directing their testimony to the incidents mentioned in the conversations summarized in the investigator's brief. Their testimony was, of course, entirely favorable to themselves. Some members of the Board asked some questions of the appellants. None of the answers to these questions tended to show that the appellants were guilty. Testimonials of good character from Air Force superiors, civilian employers, clergymen and other acquaintances were placed in evidence.

No witnesses other than the two appellants testified. None of the persons mentioned in the investigator's brief as having made statements derogatory to the appellants were called to testify.

The appellants' counsel made an able argument on their behalf. Among other things, he pointed out the absurdity of the following oracular item in the investigator's brief:

"Psychiatric evaluation of appl. (appellant) 21 Nov. 51 reflected a diagnosis of sexual deviate manifested by homosexuality latent.,"

in view of the plaintiff's uncontradicted testimony that the only psychiatric interview to which she was subjected lasted from 20 to 30 minutes.

The hearing was closed and the Discharge Review Board made the following

"Findings

After consideration of the evidence of record, including the 201 file in the case, the Board finds:

"a. That the discharge of the applicants under the provisions of AFR 35–66 (discharge of homosexuals) was in accord with the regulations in force at the time.

"b. That the character of the discharges was amply supported by the evidence of record.

"c. That no additional evidence of sufficient weight and credibility as to warrant reversal of the prior action in these cases has been adduced before the Air Force Discharge Review Board.

"Conclusions

"The Board recommends that no change be made in the type of discharge certificates presently in effect."

The "evidence of record" upon which the Board based its finding of guilt was

obviously not the evidence received at the hearing. All of the evidence received at the hearing tended to prove the plaintiff's innocence. The "evidence of record" was a dossier of affidavits of persons, some of whom were not even mentioned in the investigator's brief which was made available to the plaintiff at the time of her hearing before the Discharge Review Board, although the statements made in their affidavits, if believed, were extremely damaging to the plaintiff. None of the affidavits was seen by the plaintiff or her counsel until July 24, 1959, long after the plaintiff's case was pending in this court.

The "evidence of record" also contained the confidential reports of the Office of Special Investigations which were forwarded to the Air Force Personnel Counsel and the Secretary of the Air Force, and which have never been made available to the plaintiff or her counsel.

The so-called "hearing" before the Air Force Discharge Board was not a hearing at all, in the usual sense of that word. It was a meaningless formality, to comply with the regulations. The "evidence" upon which the case was going to be decided, and obviously was decided, was not present at the hearing, unless the undisclosed dossier which contained it was in the drawer of the table at which the Board sat. The appellant and her counsel were futilely tilting at shadows. However vulnerable the secret evidence may have been, there was no possible way to attack it.

The plaintiff was, after the proceeding before the Discharge Review Board, as before, a soldier dishonorably discharged, officially branded by her Government as an indecent woman, deprived of valuable rights and benefits which are given to other ex-soldiers. And all this without any semblance of an opportunity to know what the evidence against her was, or to face her accusers in a trial or hearing.

As we have said, the plaintiff is suing for her pay as a soldier, on the theory that her purported discharge was illegal and invalid. The Government says that even if the discharge actually issued was invalid, the Air Force could have validly discharged her at the time it invalidly did so, and therefore she is not entitled to be paid. There are, of course, many situations in which, if a party had acted somewhat differently, he would not have violated the legal rights of the other person and would not be liable for damages.

In the instant case, the dishonorable nature of the discharge was its very essence, the most important thing about it. We feel no urge to dissect the discharge and discard its essence, retaining only its effect of getting the plaintiff out of the Air Force and off its payroll, thus leaving her to suffer, without compensation, all the other penalties which the discharge imposed upon her.

Our conclusion is that the purported discharge of the plaintiff was invalid, and did not effect the plaintiff's separation from the Air Force.

Since the parties have filed a stipulation of facts which the court has considered, the defendant's motion to dismiss the plaintiff's petition is, under our Rule 16(b), 28 U.S.C.A., treated as a motion for summary judgment. The motion is denied.

It is so ordered.

JONES, Chief Judge, and LARAMORE and WHITAKER, Judges, concur.