Whitaker, Judge,
delivered tbe opinion of tbe court:
On January 27,1956, plaintiff, a Master Sergeant, was administratively given a general discharge under honorable conditions from tbe Marine Corps. On that date be bad bad more than 15 years’ active service in tbe Corps, of which tbe last 3 years, 9 months and 26 days was on a 6-year enlistment contract. He brought this suit, contending that tbe discharge wrongfully deprived him of bis active duty pay and allowances or, in tbe alternative, of disability retirement pay.
Tbe facts are not in dispute. They show that at least tbe ostensible ground upon which tbe plaintiff was discharged was that be possessed “schizoid personality trends which severely impair bis usefulness to tbe Marine Corps.” Tbe regulation which authorized tbe discharge of enlisted men for this reason, and under which the Marine Corps acted in plaintiff’s case, was paragraph 10275 of Volume I of the Marine Corps Manual. That paragraph reads as follows:
*472 10275 Discharge for Season, of Unsuitability:
1. The Commandant of the Marine Corps may authorize or direct the discharge for “unsuitability” of enlisted personnel considered unsuitable because of: (1) psychiatric or neurological handicaps, enuresis, personality disorders or defects, subject to physical and mental standards prescribed by the Secretary of Defense; (2) other good and sufficient reason when determined by administrative process.
2. Commanding officers shall not effect the discharge of enlisted peronnel [sic] for unsuitability except when specifically authorized by the Commandant of the Marine Corps. In cases where a Commanding Officer considers an enlisted person unsuitable for further retention, he may refer the case to the Commandant for decision. Prior to recommending the discharge of an enlisted person for unsuitability, the Commanding Officer shall investigate the case. The person concerned shall be informed by [sic] the contemplated action and the reasons therefor, and shall be given an opportunity to make any statement in his own behalf that he may desire. If doubt exists as to the existence of a mental or physical disability as the cause for unsuitability, the enlisted person shall be brought before a board of medical survey for a determination of fact. In every case of discharge for unsuitability recommended by a commanding officer a complete statement giving all circumstances of the case together with a signed statement from the person concerned shall be forwarded.
3. Enlisted personnel shall not be recommended for discharge for unsuitability as a punishment or in lieu of a court-marshal, [sic]
4. Special instructions as to the procedure to be followed for the elimination of the unsuited among newly enlisted personnel will be issued to Marine Corps recruit depots by the Commandant of the Marine Corps. [Emphasis added]
Plaintiff’s difficulties stemmed from an accusation that he had sexually molested an 8-year-old child, the daughter of one of his neighbors. On August 26, 1955, the neighbor made the accusation against plaintiff to the Provost Marshal at Camp Pendleton, California, where plaintiff was stationed. Plaintiff was arrested and interrogated by members of the Criminal Investigation Section of the Provost Marshal’s office. On August 29, 1955, he executed a con *473 fession. Plaintiff was then placed in the brig, where he was examined by a psychiatrist.
The psychiatrist reported that, in his opinion, plaintiff was suffering from “an Immaturity reaction, passive dependent reaction which has been present all of his life, and aggravated in several circumstances: his experiences as a prisoner of war, and the pressures of responsibility that have recently increased in his job.” The report concluded that, in view of plaintiff’s mental Condition, it was not advisable to subject him to the added stress of a trial on the charges against him. The psychiatrist also recommended that plaintiff be hospitalized for additional observation and psychiatric examination.
Plaintiff was then transferred to the IT.S. Naval Hospital at Camp Pendleton. After plaintiff had been in the hospital for a month, the hospital commander advised plaintiff’s commanding officer that in spite of plaintiff’s “strong schizoid and dependent personality trends * * * he is at present considered to be sufficiently in command of himself to handle both his normal work routine and to face such charges as might be forthcoming.”
At the same time, the Provost Marshal reported to plaintiff’s commanding officer that his investigation revealed that the charge against plaintiff of child-molestation was well-founded.
With these medical reports and the Provost Marshal’s report before him, plaintiff’s commanding officer instituted proceedings to discharge him under the authority of paragraph 10275 of the Marine Corps Manual, supra. On November 9,1955, he wrote to the Commander of Camp Pendle-ton, stating that it was his present intention to recommend that plaintiff be discharged for unsuitability. His letter stated that upon receipt of the Provost Marshal’s report on the charge of child-molesting he had ordered a psychiatric examination of the accused to determine his ability to stand trial, and that it had beeen concluded that “there is insufficient evidence to sustain a court martial conviction for child-molesting.” However, his letter continued, “in view of the admissions of Master Sergeant Sofranoff * * * there is a strong inference that Master Sergeant Sofranoff possesses *474 schizoid personality trends which seriously impair his usefulness to the Marine Corpshence, he requested that a board of medical survey be convened, “since some doubt exists concerning the extent of his personality disorder.”
The Camp Commander, however, refused to permit plaintiff to be evaluated by a board of medical survey, on the ground that such a board could add little to the psychiatric evidence already in hand, and that “[t]he procedure of having this man appear before a board of medical survey at this time would merely serve to delay the administrative disposition of his case.”
Thereafter, on December 19, 1955, plaintiff’s commanding officer recommended to the Commandant of the Marine Corps that plaintiff be administratively discharged under paragraph 10275 without further psychiatric evaluation. Plaintiff was given the opportunity to, and did, make a written statement to accompany the commanding officer’s letter. In his statement, plaintiff categorically denied the allegation of child-molestation and repudiated his confession, stating that it had been illegally extorted from him under duress.[1] He demanded a trial by court-martial.
His demand for a court-martial was ignored or denied and the Commandant of the Marine Corps directed that plaintiff be discharged, administratively. On January 27, 1956, he was given a general discharge under honorable conditions from the Marine Corps.
Some three months later, plaintiff applied to the Board for Correction of Naval Records, under the auspices of a veterans’ organization, requesting reinstatement in the Marine Corps. He contended that the accusation against him was false and that he should not have been discharged. His application was denied on the ground that the evidence amply substantiated the charge of child-molestation.
In October 1959, plaintiff made a second application to the Correction Board. This time he was represented by *475 private counsel. He pressed two alternative claims: (1) that his discharge was invalid because it was issued under procedures which violated then-existing regulations; and (2) that, if there were any good reason for his elimination from the Marine Corps, he should have been retired for physical disability. On the Board’s recommendation, plaintiff was permitted to enter the U.S. Naval Hospital at Oakland, California, where he was given a complete psychiatric examination followed by an appearance before a Physical Evaluation Board. The Physical Evaluation Board considered both the old and the new psychiatric reports and concluded that, from a medical standpoint, plaintiff had been physically fit for duty at the time of his discharge. The Navy’s Physical Beview Council approved these findings. Thereafter, the Correction Board denied plaintiff’s application,[2] and, on August 27, 1959, the Secretary of the Navy approved the Board’s action.
The issue which these facts presents is whether plaintiff’s discharge is invalid by reason of the Marine Corps’ failure to observe the terms of the regulation under which it discharged him. There are two aspects of paragraph 10275 of the Marine Corps Manual that concern us in this case. First, subparagraph 3 prohibits the discharge of an enlisted person for unsuitability “as a punishment or in lieu of a court-marshal.” [sic] Second, subparagraph 2 directs that “If doubt exists as to the existence of a mental or physical disability as the cause for unsuitability, the enlisted person shall be brought before a board of medical survey for a determination of fact.”
The ostensible reason for plaintiff’s discharge was that he possessed “schizoid personality trends which seriously impair his usefulness to the Marine Corps.” His commanding officer so stated. It can be justified, if at all, only on this ground. Otherwise, it would have run afoul of the *476 prohibition against giving an administrative discharge as a punishment or in lieu of a court-martial. The inference is strong that plaintiff’s discharge was punishment for the charge of child-molesting. The parties agree that the evidence before the commander and the file which accompanied his recommendation to the Commandant contained no derogatory information except the psychiatric reports and the report of the Provost Marshal charging plaintiff with acts constituting a crime under the Uniform Code of Military Justice.[3] The Provost Marshal’s report concludes as follows:
Based on the foregoing report of investigation, it is concluded that:
a. sofraNoff did, at Oceanside, California, on or about 20 June 1955, take indecent liberties upon the body of Anita lambeet, a female under 16 years of age, by fondling her and placing his hands upon her leg and private parts with intent to gratify the sexual desires of the said soeraNoef.
The form of this statement is virtually an exact copy of the Manual for Courts-Martial’s sample specification for charging the offense of indecent acts with a child.[4] The first Correction Board denied plaintiff’s application because the evidence amply substantiated the charge of child-molestation.
It is therefore clear that, if plaintiff’s discharge is not to founder upon the shoal of the prohibition against administrative discharge as a substitute for criminal action, it must be premised upon the assumption that the child-molestation charge was but a symptom of an underlying personality defect rather than the direct cause of the discharge proceedings. But, if this assumption is accepted, we are nevertheless of the opinion that plaintiff’s discharge was unlawful, because one of the prerequisites of such a discharge is that in case of doubt as to the existence of mental or physical dis *477 ability as tbe cause of unsuitability, tbe enlisted man must be sent before a board of medical survey for a determination of tbe facts relating to bis alleged unsuitability. See paragraph 2 of the regulation quoted on pages 2 and 3 hereof. This was not done.
In Smith v. United States, 155 Ct. Cl. 682 (1961), we considered tbe discharge of an enlisted man for psychological defects under a regulation that was virtually identical in terminology with tbe one presently before us. That Navy regulation also required that tbe enlisted man be brought before a board of medical survey if there was doubt whether his unsuitability was the result of a mental or physical disability. In Smith, the plaintiff, an enlisted man, had been charged with molesting a minor child and had been committed to a state mental hospital for psychiatric examination. The psychiatrists found that the plaintiff was a “severely neurotic individual * * * bordering on an overt psychosis of paranoid schizophrenia.” This was the only medical evidence before the commanding officer at the time the administrative discharge proceeding was carried out. We said that, in those circumstances, “there was, to say the least, ‘doubt as to the existence of a mental or physical disability’ and he [plaintiff] should have been brought before a board of medical survey for a determination of fact, pursuant to the requirements of the regulation under which he was discharged.” Id., at p. 691. The failure to bring the enlisted man before such a board was, we held, a fatal defect in his discharge.
In the case at bar, the only medical reports before plaintiff’s commanding officer stated that plaintiff was suffering from “strong schizoid and dependent personality trends” and “an Immaturity reaction * * * probably neurotic,” but, after plaintiff had been hospitalized for a month the commanding officer of the hospital reported that, notwithstanding the disorder, plaintiff was “sufficiently in command of himself to handle both his normal wort routine and to face such charges as might be forthcoming.” Though we shrink from venturing into the morass of psychiatric terminology, it seems clear that, having had the benefit of these medical reports, the administrative officials must have had “doubt *478 * * * as to the existence of a mental or physical disability” within the meaning of the regulation.
This conclusion is strengthened by the fact that plaintiff’s military record, which was also before his commanding officer, revealed that he had spent several years in a Japanese prisoner-of-war camp. Indeed, plaintiff’s immediate commander had precisely this sort of doubt; he recommended that plaintiff be sent before a board of medical survey, but he was overruled at a higher echelon.
The only reason given for the failure to send plaintiff before a board of medical survey was that this procedure “would merely serve to delay the administrative disposition of his case” — this notwithstanding a regulation which required that he be brought before such a board.
We conclude, therefore, that the failure to bring plaintiff before a board of medical survey as required by paragraph 10275 of the Marine Corps Manual violated that regulation. Having elected to discharge plaintiff under the provisions of paragraph 10275, the Marine Corps could lawfully discharge him only by complying with all of the terms of that regulation. Since it did not do so, his discharge was invalid. Clackum v. United States, 148 Ct.Cl. 404, 296 F. 2d 226 (1960); Smith v. United States, supra; Cf. Service v. Dulles, 354 U.S. 363 (1957).
Defendant argues that any defect in the procedure by which plaintiff was discharged was cured when he received a discharge under honorable conditions. We do not agree. This form of discharge is, as defendant concedes, less than an honorable one. The contention which defendant now makes was expressly rejected in Murray v. United States, 154 Ct.Cl. 185, 188 (1961). Since the vast majority of discharges from the armed forces are honorable, the issuance of any other type of discharge stigmatizes the ex-serviceman. It robs him of his good name. It injures his economic and social potential as a member of the general community. See Bland v. Connally, 293 F. 2d 852, 858 (D.C. Cir. 1961); Note, 69 Yale L.J. 474, 492 (1960). See also, Davis v. Stahr, 293 F. 2d 860 (D.C. Cir. 1961); Smith v. United States, supra.
Plaintiff is therefore entitled to recover. He has made alternative and mutually exclusive claims for active duty *479 pay and allowances and for disability retirement pay from the date of his discharge. When the case was before the bar, his counsel advised the court that, if defendant were held liable, he would elect to receive his active duty pay and allowances.
Under the rule announced in Murray v. United States, supra, and Clackum v. United States, 161 Ct. Cl. 34, plaintiff is entitled to recover his active duty pay and allowances from January 27, 1956, the date of his discharge, to March 31, 1958, the date when his enlistment would ordinarily have expired.
Plaintiff’s motion for summary judgment on the issue of liability is granted. Defendant’s cross-motion for summary judgment is denied. The case is remanded for further proceedings under Buie 47(c) (2) to fix the amount of plaintiff’s recovery.

 Article 31 of the uniform Code of Military Justice, 10 U.S.C. § 831 (1958), prohibits compulsory self-incrimination. Paragraph (d) of that Article provides: “No statement obtained from any person in violation of this article, or through the use of coercion, unlawful influence, or unlawful inducement shall be received in evidence against him in a trial by court-martial.''

 The Board for Correction of Naval Records apparently completely disregarded plaintiff’s allegation that he was discharged in violation of paragraph .10275 of the Marine Corps Manual. The exhibits filed by the parties do not explain why the Board failed to deal with this issue. It was raised by inference in plaintiff’s first, somewhat inartistic, application, but it was clearly asserted in the second proceeding. Though the Board fully considered one ground of plaintiff’s application, it completely overlooked the other.

 In military law, the criminal offense of indecent acts with a child under the age of 16 years is punishable under Article 134 of the Uniform Code of Military Justice, 10 U.S.C. § 934 (1958), which makes criminal “all conduct of a nature to bring discredit upon the armed forces, and crimes and offenses not capital” not covered by specific criminal articles. See manual fob courts-martial, UNITED STATES, 1951 386.

 See manual fob coubts-mabtial, united states, 1951 491 (Appendix 6, form 146).