Harold **BROWN**, Secretary of the Air
Force, Appellant,

v.

**Leonard GAMAGE**, Appellee.

No. 20020.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 9, 1966.

Decided March 30, 1967.

Petition for Rehearing en banc
Denied May 23, 1967.

---

Mr. David L. Rose, Atty., Dept. of Justice, with whom Asst. Atty. Gen. John W. Douglas, Messrs. David G. Bress, U. S. Atty., and Edward Berlin, Atty., Dept. of Justice, were on the brief, for appellant. Mr. Frank Q. Nebeker, Asst. U. S. Atty., also entered an appearance for appellant.

Mr. Alfred L. Scanlan, Washington, D. C., and Mr. John G. Sobieski, Los Angeles, Cal., of the bar of the Supreme Court of California, pro hac vice, by special leave of court, for appellee.

Before BAZELON, Chief Judge, BURGER, Circuit Judge, and EDWARDS,* Circuit Judge for the United States Court of Appeals for the Sixth Circuit.

EDWARDS, Circuit Judge:

In this case Lieut. Col. Leonard A. Gamage appeals from his compelled discharge from the active service of the United States Air Force. The Board of Inquiry which heard and sustained charges against him of falsifying weather reports accorded him an honorable discharge with retirement pay.

In the declaratory judgment proceedings brought before the United States District Court by appellee Gamage, the United States District Judge held that Lieut. Gamage had not been given a "fair hearing." He held the discharge to be "null and void" for failure to observe the statutory requirement of 10 U.S.C.

§ 8792(b) (1964), which provides for "a fair and impartial hearing before a board of inquiry."

The United States District Judge held "[T]o find a person guilty of a serious dereliction of any kind where part of the testimony against him consists of *ex parte* written statements does not constitute a fair hearing, as we use that term. * * *" He directed the Secretary of the Air Force to restore appellee to active duty.

■ The District Judge found no failure on the part of the Air Force to provide Gamage with an "impartial" hearing. Nor do we.

The District Judge's findings as to "unfairness" were based entirely upon the admission of statements taken by the Air Force, without participation of Gamage or his counsel in the taking of such statements. These statements were admitted against Gamage in the course of the hearing without the persons who had made them being produced at the hearing themselves. This, of course, raises the classic case of failure of opportunity for confrontation familiar in criminal trial proceedings. Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

■ We do not, however, deal here with a criminal trial. The hearing with which we are concerned is an administrative procedure calculated to determine the employment rights of an Air Force officer. In addition, we deal with all of the complex additional problems posed by the fact that the agency involved is one of the military services of the United States. Clearly, Gamage has no constitutional right to active duty as an Air Force Lieut. Colonel. Clearly, also, we do not review this discharge against the constitutional standard of the Sixth Amendment of the United States Constitution, since by specific language it applies "in all criminal prosecutions." U.S. Const. amend. VI.

But Congress has provided by applicable statute for a "fair and impartial

* Sitting by designation pursuant to Section 291(a), Title 28 U.S.Code.

hearing." These words we assume should be interpreted as they were used—to apply to an administrative hearing in a military service.

Facts which are relevant to our decision include the following: Four of the five witnesses whose *ex parte* statements were introduced were retired or inactive Air Force personnel. The fifth was an officer on active duty in England at the time of the hearing. Their statements (or certainly some of them) were material to the issues posed by the charges against appellee. Eighteen witnesses were present in person and subject to cross-examination, and their testimony covered the same general charges. It is also true, however, that the testimony for appellee concededly created a dispute of fact as to these issues which the Board of Inquiry had to resolve. Clearly, the *ex parte* statements were before the Board for consideration and they could have prejudiced the result.

The statute which we are called upon to construe provides:

"§ 8792. *Boards of inquiry: composition; duties.*

"(a) Boards of inquiry, each composed of three or more general officers, shall be convened at such places as the Secretary of the Air Force may prescribe, to receive evidence and make findings and recommendations whether an officer, required to show cause under section 8791 of this title, shall be retained on the active list of the Regular Air Force.

"(b) A *fair and impartial hearing* before a board of inquiry shall be given to each officer so required to show cause for retention.

"(c) If a board of inquiry determines that the officer has failed to establish that he should be retained on the active list, it shall send the record of its proceedings to a board of review.

"(d) If a board of inquiry determines that the officer has established that he should be retained on the ac-

tive list, his case is closed. However, at any future time, he may be again required to show cause for retention under section 8791 of this title." Chapter 860, Title 10, U.S.C. § 8792. (Emphasis added.)

"§ 8793. *Boards of review: composition; duties*

"(a) Boards of review, each composed of three or more general officers, shall be convened by the Secretary of the Air Force, at such times as he may prescribe, to review the records of cases of officers recommended by boards of inquiry for removal from the active list of the Regular Air Force under section 8792 of this title.

"(b) If, after reviewing the record of the case, a board of review determines that the officer has failed to establish that he should be retained on the active list, it shall send its recommendation to the Secretary for his action.

"(c) If, after reviewing the record of the case, a board of review determines that the officer has established that he should be retained on the active list, his case is closed. However, at any future time, he may be again required to show cause for retention under section 8791 of this title." Chapter 860, Title 10, U.S.C. § 8793.

"§ 8795. *Rights and procedures*

"Each officer under consideration for removal from the active list of the Regular Air Force under this chapter shall be—

"(1) notified in writing of the charges against him, at least 30 days before the hearing of his case by a board of inquiry, for which he is being required to show cause for retention on the active list;

"(2) allowed reasonable time, as determined by the board of inquiry under regulations of the Secretary

of the Air Force, to prepare his defense;

"(3) allowed to appear in person and by counsel at proceedings before a board of inquiry; and

"(4) allowed full access to, and furnished copies of, records relevant to his case at all stages of the proceeding, except that a board shall withhold any records that the Secretary determines should be withheld in the interests of national security.

"In any case where any records are withheld under clause (4), the officer whose case is under consideration shall, to the extent that the national security permits, be furnished a summary of the records so withheld." Chapter 860, Title 10, U.S.C. § 8795.

The statute has been followed in detail by the regulations—except, of course, it may be argued that any material and disputed statement admitted without cross-examination destroys the "fairness" of any hearing.

The regulations (1957 Air Force Regulations, 36-2—See App. A) do provide for full notice of charges and of any adverse statements to be offered. They "encourage" the Board to invite material witnesses who are "reasonably available" to appear. They provide for the Air Force to require the presence of witnesses who are on active duty, provided "military requirements permit." They provide for the Board to "invite" witnesses who are civilians or members of Reserve components, but each such witness invited is told that his expenses are not reimbursable. Section 18(d) of the Regulations also provides:

"The legal adviser to the board may interrogate witnesses and otherwise assist the board so that the record will be as complete as possible to make sure that all pertinent information favorable as well as unfavorable to the respondent is brought to the attention of the board and made a matter of record. The legal adviser is in no way to be considered a prosecutor and will not conduct himself as one."

■ The Regulations appear to have been followed explicitly by the Board of Inquiry. Cf. Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957).

This record discloses that the disputed *ex parte* statements were part of a lengthy file made available to appellee well before the hearing. No records were withheld from appellee. Appellee was given requested adjournments in order to prepare his defense, and the site of the hearing was transferred from Illinois to California at his request also.

Appellee was furnished with both the statements from and addresses of the five officers and men. Appellee was told that statements, affidavits and depositions which he desired to submit would not be objected to, and that the list of names "should be of assistance in contacting any potential witnesses for purposes of obtaining depositions for the Board of Inquiry." Subsequently, the Recorder of the Board of Inquiry met with counsel for appellee to discuss the availability of witnesses. No request was made for Air Force assistance in the taking of depositions, and appellee did not submit any statements, affidavits or depositions from the five parties whose statements are in dispute.

It is conceded that the only one of the five witnesses whom the Air Force could have compelled to testify (by ordering him back from England where he was stationed on active duty) was not asked for by appellee. The four whose presence as adverse witnesses was requested by appellee were requested by the Recorder of the Board of Inquiry to appear at the hearing. Each refused. It is conceded that none of these witnesses (all retired Air Force personnel) could have been compelled to appear and testify.

At the conclusion of the hearing counsel for appellee entered in the record an acknowledgment that the Recorder "has done an excellent job, and has made a diligent effort to procure the witnesses that [appellee's counsel] requested."

In summary, as to the disputed statements from the five Air Force officers and men, appellee did not seek the presence of the only witness, Major Trevorrow, whose presence the Air Force could have compelled. He did not request assistance of the Air Force in his taking the depositions of the four other men to whose statements he objected. Nor did he offer any statements, affidavits or depositions from them as a result of direct contact with them. We note additionally that appellee makes no claim that financial or other factors rendered contact with the five officers and men an impossibility for him.

The issues involved in this case are substantial ones. If we declare that a "fair" hearing in the context of this statute requires physical presence and cross-examination at the hearing, then either Congress must amend the statute to supply the Air Force the missing subpoena power, or the Air Force may be completely deprived of testimony from retired, inactive, or discharged personnel (arguably vital in some cases). On the other hand, we are by no means unimpressed with the fact that issues of material importance to appellee's present and future standing were decided by Air Force Board of Inquiry and that Congress plainly provided that such action be taken only after "a fair and impartial hearing."

■ The general rule in relation to administrative hearings does not bar all hearsay. 60 Stat. 241 (1946), 5 U.S.C. § 1006(c) (1964), Vitarelli v. Seaton, *supra,* 359 U.S. at 540, 79 S.Ct. 968.

The primary concern of the courts in the cases most relied upon by the appellee has been to guarantee the element of "fairness" which is involved in full disclosure of charges and adverse statements with identification of the sources of same so that the accused could effectively prepare a defense. Vitarelli v. Seaton, *supra;* Willner v. Committee on Character, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963); Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959).

In this last case the United States Supreme Court said:

"Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. * * * " Greene v. McElroy, *supra* at 496, 79 S.Ct. at 1413.

■ It is certain that the statute, the regulations and the procedures followed by the Board of Inquiry in this case fully matched the standards of disclosure and discovery set forth in the cases cited above.

Greene v. McElroy, *supra,* however, also stands generally for the proposition that "in the absence of explicit authorization from either the President or Congress" an administrative hearing which does not afford "the safeguards of confrontation and cross-examination" does not "comport with our traditional ideas of fair procedure." Greene v. McElroy, *supra,* at 508, 79 S.Ct. at 1420. This case, of course, did not deal with the military service nor was the penalty therein imposed the retirement from active service of an officer who was accorded honorable discharge and retirement pay. Arguably, too, in the instant case (as opposed to *Greene*), there was "explicit authorization from * * * Congress" of the procedure employed by the Air Force in this hearing.

More important to our decision, however, is the fact that appellant herein had procedural rights (which were never accorded in the *Greene* case!) which he knowingly failed to employ.

In the second *Williams* case (Williams v. Zuckert, 372 U.S. 765, 83 S.Ct. 1102, 10 L.Ed.2d 136 (1963)), the United States Supreme Court vacated a judgment of the Court of Appeals and remanded the case to the District Court for a hearing to determine "whether the

petitioner, desiring the presence of witnesses at his hearing, either discharged his initial burden under the applicable regulations *by making timely and sufficient attempt to obtain their presence* or, under the circumstances and without fault of his own, was justified in failing to make such attempt, and, if so, whether proper and timely demand was made upon the Air Force so that it was required to produce such witnesses for cross-examination. * * *" Williams v. Zuckert, *supra*, at 765, 83 S.Ct. at 1102. (Emphasis added.)

▇ In the order of the District Judge, there is this finding: "[T]he defendant failed to comply with the requirement of 10 U.S.C. 8792(b) in denying plaintiff a fair hearing before an Air Force Board of Inquiry, when there was introduced in evidence against the plaintiff and over the timely objection of his counsel, *ex parte* written statements of accusing witnesses who were not made available to plaintiff for cross examination, *either by way of depositions* or during the hearing." (Emphasis added.)

We believe the District Judge was in error in his construction of the stipulated record. Important additional procedures for seeking a form of cross-examination of all five persons whose statements are the subject of this dispute were available to appellee. His failure to request the presence of Major Trevorrow and his failure to take depositions or statements from the other four, or to request the aid of the Air Force in arranging to take their depositions or statements, allows the inference that he was aware of the adverse nature of their testimony. Under these circumstances we cannot agree that admission of their statements deprived him of a "fair" hearing within the meaning of the Congressional enactment under which the Board of Inquiry acted.

Reversed and remanded for dismissal of the complaint.

## APPENDIX A

The 1957 Air Force Regulations 36–2 governing the Elimination or Release of Officers from Active Duty by Reason of Unfitness, Unacceptable Conduct, or Inefficiency, provide in pertinent part:

\* \* \* \* \* \*

16. *Briefing the Board of Inquiry.* The major air commander or his designated representative will, before the board convenes, brief the board members regarding their responsibility to carry out the policies announced in this regulation and in the guidance manual. This briefing, among other matters, should emphasize that the show cause hearing is administrative in nature and is not subject to the rules and procedures governing court action. Further, that the case as presented to the board by the major air commander is based on a determination of a board of senior Air Force officers, or in the case of a non-probationary Regular commissioned officer, a board of five general officers that the respondent is required, because of failure to achieve the prescribed standards of performance, to show cause for his retention in the Air Force. The burden rests with the respondent to present evidence to refute, rebut or mitigate the evidence presented by the government.

17. *Rights a Respondent Has.* An officer appearing as a respondent before a board of inquiry will have the following rights:

a. He may present evidence and appear in person with or without counsel. If he does not appear in person, he will be represented by counsel at all open proceedings of the board of inquiry. However, he will not be reimbursed for expenses in connection with the appearance or assistance of civilian counsel.

b. He may request that any witness appear before the board of inquiry if he believes testimony of the witness will be pertinent to the case. The board will honor the request if it considers the witness to be reasonably available and his testimony can add materially to the case. However, he will not be reimbursed for expenses in connection with the appearance or assistance of civilian wit-

nesses or military personnel not serving on extended active duty.

c. He may challenge for *cause only* any voting member of the board of inquiry.

d. He or his counsel may question any witness brought before the board of inquiry.

\* \* \* \* \* \*

g. At all stages of the proceedings of the board of inquiry, he will be allowed full access to and will be furnished copies of records which the board considers relevant to his case except certain classified, medical, or professional reports.

\* \* \* \* \* \*

18. *Conduct and Action of the Board of Inquiry:*

\* \* \* \* \* \*

c. The board is encouraged to invite witnesses to appear if the witnesses are reasonably available and if, in the opinion of the board, their testimony is essential or will contribute materially to the case. Whenever practical in cases involving substandard performance, arrangements will be made for the respondent's immediate commander or the individual responsible for preparing his effectiveness report (AF Form 77) to appear as a witness before the board of inquiry. The board will contact witnesses in the following manner:

(1) The president of the board will invite witnesses who are civilians or members of the Reserve components of the Air Force not on extended active duty to appear before a board. Each witness will be informed that the board cannot reimburse him for expenses incurred in connection with his appearance before the board.

(2) The major air commander concerned will, when so requested by the board and provided that military requirements permit, make witnesses available who are military persons serving on the active list or on extended active duty. Direct communication between major air commands is authorized when required. Travel of military witnesses should be limited to official military transportation. In instances where official military transportation is not available, commercial means will be used. Funds for reimbursement of travel will be provided from resources available to the major air commander. The use of affidavits or depositions to obtain testimony of witnesses who are not reasonably available is encouraged.

d. The legal adviser to the board may interrogate witnesses and otherwise assist the board so that the record will be as complete as possible to make sure that all pertinent information favorable as well as unfavorable to the respondent is brought to the attention of the board and made a matter of record. The legal adviser is in no way to be considered a prosecutor and will not conduct himself as one.