Nichols, Judge,
delivered the opinion of the court:
This case is before us on cross motions for summary judgment. The parties agree it may be decided on the administrative record. Apparently contrary to plaintiff’s expectation, defendant does not in its motion follow through with its defense of laches. Therefore, we regard the defense as waived, and consider it no further.
Plaintiff in 1960 was a master sergeant in the United States Air Force with eighteen years of meritorious service. A Board of Officers, convened in July 1960, found as a fact that he had participated in an act of fellatio with “apparent premeditation” on or about 8 May 1960, during his current enlistment. They recommended that he be given an undesirable discharge, and this was done. He has exhausted his administrative remedies. He sues for a judgment declaring his discharge null and void, and for damages. This is a serviceman’s hack pay suit such as has been used many times to test the legality of a discharge, whether pursuant to a court martial or, as here, otherwise.
When one clears away the inevitable underbrush, two issues stand out sharp and clear. The first: did the Air Force follow its own regulations in effecting the discharge? Second : if it did not, was the error harmless ? We answer both questions in the negative.
In Conn v. United States, 180 Ct. Cl. 120, 127, 376 F. 2d 878, 881 (1967), we indicated our awareness of the stigma consequent on an undesirable discharge. The record herein reflects consciousness of this by all concerned. It means, among other things, loss of veteran’s benefits. Therefore, we cannot sustain a discharge of this type if the applicable regulations are not “honored in letter and spirit.” Conn, supra. See also Middleton v. United States, 170 Ct. Cl. 36, 40 (1965).
The Board was convened pursuant to AFB 35-66 (17 March 1959) a special regulation for cases of homosexuality among Air Force officers and men. It declares that such offenders are not to be tolerated in the Air Force (paragraph 3a). They are divided into classes I, II, and III (paragraph 12). Offenses in I are those accompanied by assault or coercion, or involving a minor. They call for General Court *518 Martials. Cases in II are generally acts or attempts not in I. They may be disposed of, as here, on Board findings, if the offender is an enlisted man. Cases in III are those of mere homosexual tendencies, association with homosexuals, or acts before Air Force enlistment. Plaintiff’s case was considered to be in category II, and his commanding officer recommended a general discharge. If the Board finds a case is in category II it may recommend undesirable, general, or honorable discharge, or retention in service (paragraph 20d), but the more lenient treatment is available only if the “particular circumstances in a given case warrant.” (paragraph 4b). In category III cases undesirable discharge is not authorized.
It appears from AFB 39-17 (17 March 1959), that there are or were some homosexual acts that do not fall under 35-66 at all, but are dealt with as “sexual perversion” under 39-17 (paragraph 5). The defendant has been most cooperative in furnishing its applicable regulations, but has not explained the difference between 35-66 and 39-17 homosexuality. Together with the three classes of 35-66 offenses, the point does emphasize the need for specificity as to just what sort of homosexual act is before the court, distasteful as the subject is.
We find a failure by the Air Force to follow its own regulation in the admission in this case, at the Board hearing, over repeated objection, of a so called “certificate”, which seems to have been the only evidence considered against plaintiff, as we will show. It was not attached to the notice of charges as by 35-66 it should have been, as will appear, but apparently plaintiff did get it shortly before the hearing.
The objection by plaintiff’s assigned military counsel, a Lieutenant Neville, was as follows:
Sir, we would still object on the grounds that this is hearsay; that the names of the witnesses against the respondent are not even stated; that the witnesses are not here to testify; and he has not been afforded the right to confront the witnesses or to cross-examine them.
The “certificate” purported to summarize an investigative report. It stated (after eliminating portions relating to of *519 fenses during prior enlistments) that on 8 May 1960, Dallas [Texas] police observed plaintiff “committing an act of fellatio upon” a named person. “Observation was made possible by a two-way mirror installed in the Fox Theater rest room, the place of the incident.”
The reasons for proving the incident in this manner were that the full report was classified and that the Dallas policemen, being civilians, could not be compelled to attend the hearing. There was no showing of any invitation or request to them to attend, nor was consideration given to taking their depositions, affidavits, or written statements, so far as appears.
Plaintiff demanded the full report, or, 'alternatively, the witnesses’ statements he supposed were annexed. He was denied both. There was some talk of giving him the witnesses’ mere names, presumably the policemen, but he ended up not getting even this, under circumstances such that it seems fair to impute to the Board an outright refusal. The essential question clearly, though, is the ruling admitting the “certificate” over objection, and whether some procedure existed by which, on its admission, the defense might test the correctness of its statements by questioning somebody in some manner, is a collateral issue. Fletcher v. United States, 183 Ct. Cl. 1, 392 F. 2d 266 (1968).
Begulation AFB 35-66 provides that the AF member in a class II case will be “confronted with the nature of the evidence against him * * *” (paragraph 13b). The statement of charges is to include “the unclassified statements and depositions, if any, and summary * * * and any other evidence which substantiates the statement of reasons” (paragraph 15d(2) (c)). The “summary” referred to is what is called on its face in the record a “certificate.” The Board is to follow AFB 11-1 (to be discussed infra); it is not to follow “strict rules of evidence * * * but reasonable bounds of relevancy, competency, and materiality will be maintained.” (paragraph 20a). The respondent may request the Board to call any witness who will be called if “reasonably available and his testimony can add materially to the case.” Bespondent may question witnesses who appear before the Board (paragraph 20c(3)).
*520 Regulation 11-1 sets general standards for Boards of Air Force officers to follow in conducting investigations. It has not been noted that 35-66 incorporates it by reference. 11-1 requires that:
* * *. The investigation * * * should be so conducted that the best evidence obtainable and available may be considered. * * *.
a. The board should not be satisfied until all reasonable available evidence has 'been examined, such as:
(1) Sworn testimony * * *.
(2) Depositions.
(3) Certificates * * *.
H* ♦!* •!•
b. A board is not bound by the formal rules of evidence * * *
but generally is to observe rules of “materiality and relevancy,” and “hearsay rules.” (All in paragraph 9.)
a. A person whose conduct, * * * is under investigation * * * will be permitted * * * to cross examine witnesses appearing against him, * * *
* * *
e. Depositions, certificates, affidavits, and stipulations may be received and considered by the board in cases where it is impracticable or impossible for a witness to appear personally. * * *
It is, of course, recognized that Boards cannot “compel the attendance of civilian witnesses.” (All in paragraph 10.)
It would seem a mental feat not to appreciate, under these rules, that the Air Force wanted a document such as the “certificate” to be received only if the prosecution showed that it was “impracticable” to obtain, preferably the police officers’ personal attendance, or at any rate their depositions, or some other less objectionable form of hearsay, perhaps. No such showing was made.
The case is almost on all fours with Powell v. Zuckert, 366 F. 2d 634 (D.C. Cir. 1966), involving discharge of a civilian employee of the same employer, the United States Air Force. The applicable regulation provided that the accused might *521 “question any person * * * who testifies at the hearing” and that if a witness is unavailable a signed statement may be received. The administrative tribunal received a signed statement over objection on a showing that the witness was a Miss Muirá, a Japanese national, whose attendance could not be compelled. The proof of the offense was by Miss Muira’s statement only in part. The court held the decision on Miss Muira’s portion of the case invalid because “* * * here the record affirmatively suggests that no effort whatever was made to produce her.” Id. at 641. Therefore unavailability is not to be deduced from the mere inability to compel a witness’ attendance; more must appear. How much more need not be considered when no attempt has been made to show anything more at all. The Court of Appeals cited Vitarelli v. Seaton, 359 U.S. 535, 545 (1959), in which the Supreme Court declared that because the removal “fell substantially short of the requirements of the applicable departmental regulations” the “dismissal was illegal and of no effect.”
In Clackum v. United States, 148 Ct. Cl. 404, 296 F. 2d 226 (1960), may be found some rather blunt comments on a discharge “under conditions other than honorable” issued to an airwoman under a predecessor of the version of 35-66 before us here. The plaintiff there never had a chance to confront the witnesses against her or even know what they had charged. We called the so-called “hearing” a “meaningless formality.” Id. at 409, 296 F. 2d at 229. It is to be presumed the Air Force in 1959 had come to like conclusions 'and sought in the new 35-66 to provide a basically fair procedure. It should be construed in such a manner as to reflect these intentions. Cf. Greene v. McElroy, 360 U.S. 474, 507 (1959). To convict a man, in practical effect, on a mere summary of an investigative report, on the irrelevant pretext that the full report is classified, is not to do just credit to the authors of the new 35-66; the formality is only superficially more meaningful. The right not to be convicted on hearsay, and to confront and cross-examine one’s accusers, are basic, and are guaranteed by the Regulations involved, with exceptions not here relevant.
*522 Defendant relies on Brown v. Gamage, 377 F. 2d 154 (D.C. Cir.), cert. denied 389 U.S. 858 (1967). There an officer was given 'an honorable discharge after an administrative hearing. The issue was whether he had falsified weather reports. In the Court of Appeals he denied the legality of receiving ex parte written statements of five absent witnesses. It affirmatively appeared that four of them were asked to attend the hearing, refused, and could not be compelled to come. Acceptance of these statements was not inconsistent with Powell v. Zuckert, supra, or anything decided here. The fifth was an active duty officer whose attendance could have been compelled. Plaintiff had the statement of this man furnished him before trial and did not request his presence. The Regulations involved, as quoted by the court, do not contain the express provisions of those at bar regarding hearsay and cross-examination. The court found the applicable Regulations were complied with. It was not a Vitarelli v. Seaton, supra, situation. The issue was basic fairness. Eighteen witnesses testified in person and were subject to cross examination, on the same general topics as the absent five. We see nothing in Brown v. Gamage making a summary of an investigative report legally admissible over timely objection in an undesirable discharge case, with no showing that better evidence is unavailable. Nothing we say here should be construed as applying to a Brown v. Gamage situation.
The Board was apparently misled by paragraph 9a of AFR 35-66, which provides in substance that an investigative report will not be made available to a respondent or his counsel, but when necessary “unclassified summaries or extracts of investigative reports may be released to the respondent”. This was supposed of its own force to render competent the otherwise incompetent “certificate.” It was, however, on its face not a rule of evidence to qualify or modify the rules of evidence elsewhere set forth in the Air Force regulations. It did not purport to prohibit production of the policemen or a taking of their depositions. It did not purport to lift the prohibition in other regulations against unjustified use of hearsay evidence. Its thrust primarily related to the particulars allowed to be given re *523 spondent (plaintiff here) during bis preparation for trial.
Paragraph 9 did contain provisions for protection of classified information and confidential informants, but there was nothing submitted to show that either could have been compromised by calling the policemen. It appears, indeed, that the officers arrested plaintiff and the other man at the time of alleged commission of the Dallas offense. Plaintiff was confined in jail for two days. Thus their “cover” if any would have been “blown.” Plaintiff probably knew who they were or could easily have found out from non-Air Force sources. He did not merely want to interview them in preparation of his defense, still less to call them as defense witnesses. Pie primarily objected to their testimony being used at all against him in hearsay form. This point the Board missed entirely, despite its clear enunciation by Lieutenant Neville. Cf. Fletcher, supra. Procedural regulations to protect confidential informants cannot be invoked to shield from confrontation and cross-examination material witnesses not properly so classed. Vitarelli v. Seaton, supra at 544.
We turn now to the second issue, defendant’s retreat position, which is that, anyway, the receipt of the certificate was harmless because plaintiff admitted that he committed the offense. It is undisputed that there was no evidence of guilt other than these admissions, if the “certificate” was incompetent.
The plaintiff did not testify. His alleged admissions came into the case in this way: at the start of the hearing the recorder offered in evidence an exhibit 3 that was, practically, the entire official file in the case except the “certificate” already discussed. That was left out and offered separately, as exhibit 4, for unstated reasons. The material in this exhibit 3 included reports of medical and psychiatric examinations which plaintiff had undergone, and also a lengthy statement which plaintiff had submitted at a time when he had intended to waive hearing and throw himself on the mercy of the convening authority. He had attached to the waiver a voluntary statement which he had signed, to which in turn was attached a notice “to whom it may concern” by a Chaplain with whom plaintiff had counseled. Plaintiff withdrew the *524 waiver but it and tbe statement remained in the file. There are three 'alleged admissions: to the psychiatrist, to the Chaplain, both apparently orally, and in writing to the General commanding the Second Air Force.
The psychiatrist reported that “Just recently Sergeant Glidden was apprehended in Dallas when he was observed having a homosexual relationship in the men’s room of a Dallas theater.” This has no probative value as an admission by plaintiff, however, because there is nothing to show that plaintiff was the source of the information. It could just as probably have come from the official files. By contrast, the psychiatrist did expressly impute to plaintiff admissions as to homosexual acts in prior enlistment periods, but these are irrelevant to the Board finding, that he had committed the act in his current enlistment period. The psychiatrist’s report is attached to one describing the general physical examination. In this a doctor mentions homosexual contacts, one recent, but refers to the psychiatrist as apparently his source of information. The psychiatrist did not testify.
The Chaplain said his conclusion was “that Master Sergeant Glidden is * * * truly repentant of the act of homosexuality which he recently committed.” Glidden would hardly have attached this to his statement unless it was true. Therefore we may take it as an admission by Glidden that he had recently committed an act of homosexuality. The Chaplain did not testify.
In his own statement plaintiff said that in March 1960, he was asked to furnish a security clearance and feared the ensuing investigation would reveal an incident of fourteen years previous. This preyed on his mind and he went to Dallas which “was just another attempt to run away from fear and worry. Why it led me to preform [sic] an act which had not entered my mind in so many years I do not know. * * * I am only now deeply and sincerely sorry for the discredit I have now brought on this service.”
Bead the statement with the Chaplain’s certificate, and it appears that plaintiff was admitting that he performed a homosexual act of unspecified nature in Dallas at a recent but unspecified date.
*525 The discharge recommendation of the squadron commander was based solely on the “certificate.” The original “Letter of Notification” antedated the admission. It should under AFE 35-66, par. 15d(2) (c) have stated, besides the “summary” (“certificate”) any other unclassified evidence relied on. No notice, however, was ever given plaintiff that his written statement was to be relied on as an admission. It would seem at least an implied requirement that the notice be amended if new evidence comes in after the notice date and is to be used. But here this material was not offered or considered as bearing on plaintiff’s guilt, so far as anything appears in the record. The obvious original purpose of introducing an entire file would have been to show that all steps required by regulation in such cases had been taken, that the accused had had the notice the rules required, 'and that the Board had jurisdiction. In offering the “certificate”, exhibit 4, the recorder was careful to make sure that only those parts of it were deemed before the Board that bore on acts during plaintiff’s current enlistment. No such precaution was taken as to the other material though it was replete with intimation that homosexual acts prior to the current enlistment had occurred. Still more convincing is the argument Lieutenant Neville made to the Board after the close of evidence. He said:
* * *. I ask you to consider, also, that the evidence against this man is very slim — only a small, unclassified extract summary. No witnesses have appeared here against him; no witnesses are quoted. * * *
If anyone in that room has considered it proven that plaintiff had confessed the case against him, Lieutenant Neville surely would have been pulled up short. Nothing of the kind occurred. The Board did consider the plaintiff’s statement, and that of the psychiatrist, as its President said, “in arriving at the type of discharge.” The psychiatrist had written some good things about plaintiff: that he was “intelligent and capable;” that he was “morally unreproachable except for [his] sexual perversion,” which the psychiatrist called a “disease.” The plaintiff’s statement, besides the damaging admission, included much lengthier recitals reminding the Board of his fine service record. The President evidently *526 meant they considered this material as bearing on their power to recommend, when “particular circumstances warranted,” in class II cases, a less pejorative type of discharge than the “undesirable.” He did not mean they considered it as bearing on their fact findings.
Thus, the admissions of plaintiff “lurk in the record.” He was not informed they would be used against him, as Air Force rules would have required, and they were not in fact used against him, until now. If plaintiff had been informed that his admissions would be used against him, he might have undertaken to explain them. The repudiation of confessions is not unheard of in these cases, and it does not always fail. E.g., Middleton, supra. The use of the admissions the defendant proposes to this court is, therefore, basically unfair, and contrary to the “spirit” of the Air Force Eegulations.
It must be realized that plaintiff really made no bones about admitting he was at least a class III homosexual. He could afford to, because undesirable discharge was not prescribed for class III homosexuals. But the Board was not to render a general verdict, as guilty or not guilty; it was to find facts, fixing “dates, places, persons, and events definitely and accurately” [italics in original], AFR 11-1, paragraph 9; see also AFR 35-66, paragraph 17. Only if all the elements essential to a class II case were found as facts could an undesirable discharge follow and any doubt was to be resolved in favor of respondent. Paragraph 10c (4) of SAC Supplement 1 to AFE 39-10. The findings were that plaintiff participated in an act of homosexuality during his current enlistment, May 8, 1960, that the act was fellatio, and that it was apparently premeditated. It would seem the findings were defective under 11-1, paragraph 9, in not stating the place, but a point is not made of that here. The date of the act was vital, because the new enlistment had commenced only the previous January. So far as concerned class II, offenses in former enlistment periods were not for consideration. Murray v. United States, 154 Ct. Cl. 185, 191 (1961). That date could have been obtained only from the “certificate” not from any admission by plaintiff. It must be admitted, however, that plaintiff recited a series of events in *527 the statement showing the Dallas incident was probably later than March, 1960. The characterization of the 'act as fellatio the Board could have found only in the “certificate.” The evidence to support the obviously damaging finding of premeditation is somewhat of a puzzle, but apparently is in the “certificate” allegation that plaintiff committed “an act of fellatio upon the person of” another, and thus was the active party or aggressor. No support for this could have been found in the statement, which attempts to suggest the contrary. Thus it would seem, if the Board had excluded the “certificate” and had been asked to consider plaintiff’s statement as evidence it would have been unable to make findings of the precision demanded.
In Holman v. United States, 181 Ct. Cl. 1, 383 F. 2d 411 (1967), plaintiff, a civilian employee, was caught in a theater men’s room 'by police technique resembling that reported in the case at bar. On Holman’s appealing his separation from service, a committee of fellow employees received evidence, as the employing agency’s procedure required, that included testimony of one of the arresting officers, an eye witness to the act, and also a police arrest report containing incompetent material. The committee found as facts that they believed the policeman’s testimony and that Holman committed the offense. In the circumstances we viewed the receipt of the arrest report as at worst harmless error. The case now at bar is the opposite side of the coin. The Board’s findings here connect up just as exclusively with the incompetent evidence as in Holman, those made by the committee did with the portion of its record that was competent.
The defendant is asking us to sustain the decision of the Board on the basis of evidence the Board did not consider, except on issues other than guilt or innocence. We do not think, however, that the invalidity of the action taken because of failure to follow Departmental Regulations in receipt of evidence is cured because, lurking in the record, there is other evidence the Board conceivably might have based its action on. If such a notion could ever have validity it would have to be when procedural requirements were fully met as to notice to respondent that such other evidence was being con *528 sidered, and when the other evidence met Regulation requirements of specificity and detail. This is no such case. The defendant is asking us to allow its motion because we can see that plaintiff really did commit the act. It wants us to bypass the rules we have held are binding on the administrative tribunals. Plaintiff is presumed innocent until his guilt is proved according to the prescribed forms and procedures.
Accordingly, defendant’s cross motion for summary judgment is denied, and plaintiff’s motion for summary judgment is granted. Judgment is entered for plaintiff with the amount of recovery reserved for further proceedings pursuant to Rule 4:7 (c).